Filed 8/30/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VANESSA S. RODRIGUEZ,<br><br>    Defendant and Appellant. | A159679<br><br>(Napa County Super. Ct.<br>No. CR121064) |

Vanessa S. Rodriguez appeals from the trial court's denial of her 2020 motion under Penal Code section 1473.7[1] to vacate her 2005 conviction for felony possession for sale of a controlled substance, methamphetamine, in violation of Health and Safety Code section 11378.[2] Section 1473.7 permits individuals who are no longer in custody to move to vacate a conviction or sentence on the ground it is "legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of" the plea. (§ 1473.7, subd. (a)(1).) At the time Rodriguez filed her motion,

---

[1] Statutory references are to the Penal Code unless otherwise stated.

[2] Rodriguez also based her motion on section 1016.5, which requires a trial court, before accepting a plea of guilty or nolo contendere, to advise a defendant that if he or she is not a citizen, the conviction may have certain immigration consequences, including deportation. On appeal, Rodriguez does not argue the trial court failed to provide this advisement.

1

she had been detained by federal authorities and was facing mandatory deportation to her country of birth, Mexico, because of that conviction. She has since been deported.[3]

In 2005, Rodriguez pleaded no contest to the charge of possession for sale in violation of Health and Safety Code section 11378 (as well as to transportation of a controlled substance, methamphetamine, in violation of Health and Safety Code section 11379[4]) as part of a negotiated disposition of a multi-count case against her and was placed on probation. She brought her motion soon after she was detained by federal authorities. She submitted a

---

[3] The People do not contend that deportation moots this appeal, presumably because her record of conviction, which the trial court declined to vacate, may continue to prevent her entry into this country in the future. (See *Zegarra-Gomez v. I.N.S.* (9th Cir. 2003) 314 F.3d 1124, 1127 ["case or controversy requirement is satisfied where the petitioner is deported, so long as he was in custody when the habeas petition was filed and continues to suffer actual collateral consequences of his removal"]; *United States v. Marsh* (1st Cir.1984) 747 F.2d 7, 9, fn. 2 [although defendants had been deported, their record of conviction constituted a "continuing harm" that may prevent their entry into this country in the future" and "[a]ccordingly, their appeals are not moot"].) Regardless, even if the case were moot for some reason, we would exercise our discretion to consider it because it poses issues of broad public interest, as seen by the Legislature's own declarations regarding sections 1473.7 and 1016.2, which we will discuss, and because Rodriguez argues trial court errors in implementing section 1473.7 that are likely to recur without appellate court guidance. (*County of Fresno v. Shelton* (1998) 66 Cal.App.4th 996, 1006 [appellate courts have the discretion "to decide a case which, although technically moot, poses an issue of broad public interest that is likely to recur"].)

[4] At the same time, Rodriguez also pleaded no contest to and was convicted of transportation of methamphetamine under Health and Safety Code section 11379. She does not seek to have that conviction vacated, and the People do not argue that the transportation conviction rendered her deportable or resulted in her inability to show prejudice from denial of the motion to vacate the sale conviction. We therefore do not address that conviction.

2

declaration of her own and a declaration of the supervising attorney of the law office that represented her in 2005, stating that her possession for sale conviction was legally invalid because in 2005 a prejudicial error damaged her ability to meaningfully understand the actual or potential adverse immigration consequences of her no contest plea.  The declarations further stated that, but for this error, it was reasonably probable she would not have entered the plea.  She stated that she had come to the United States when she was an infant and had lived in this country ever since, and that her family, including her two young children, her parents and her five sisters, all live in the United States.  The trial court rejected her motion on the grounds that she appeared to be on probation in another case, which it held would bar her motion under the terms of section 1473.7, and that in any event she failed to show there was a reasonable probability that she would not have entered her no contest plea if she had been fully informed of its adverse immigration consequences.

We review this case under the guidance recently provided by our Supreme Court in *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*), which directs appellate courts to independently review lower court rulings on section 1473.7 motions that are based entirely on documentary evidence.  We conclude the trial court erred in rejecting Rodriguez's motion.  Rodriguez was no longer in custody in the underlying case, and her probation status in a wholly separate case did not bar her motion.  Further, she showed it was reasonably probable that she would not have entered her no contest plea if she had known its adverse immigration consequences.  That she was not advised of these consequences by her attorney and was not aware of them is corroborated by the supervising attorney's declaration based on his review of Rodriguez's 2005 case file.  That this failure to advise was prejudicial is

3

apparent because of Rodriguez's undisputed, deep, lifelong connections to this country, the dire consequences of her plea and the likelihood that she would have fought harder to avoid these consequences if she had known of them. It is at least as probable that she would have not entered her no contest plea as that she would have. We therefore reverse.

## BACKGROUND

Rodriguez filed her motion in Napa County Superior Court in January 2020 (2020 motion) with three supporting declarations. As we detail further in the Discussion section, Rodriguez was 22 years old in 2005 and had previously committed a few relatively minor offenses that did not involve drugs. In her 2020 declaration, she stated that her life and her family had been entirely in the United States since she was a year old; that she was not informed of, and did not know, the actual or potential adverse immigration consequences of her 2005 no contest plea to the possession for sale charge and that she would not have entered it if she had known them. A supervising attorney of the law office that represented Rodriguez in 2005 declared that Rodriguez's 2005 case file contained extensive notes by her attorney but did not indicate her attorney ever looked into, or advised Rodriguez about, the possible immigration consequences of Rodriguez's plea. Rodriguez's 2020 attorney declared that the adverse immigration consequences of her possession for sale conviction, which, as an "aggravated felony" under federal law, rendered her deportable from, and unable to gain readmission to, the United States.

The People opposed Rodriguez's motion, contending she did not establish that prejudicial error damaged her ability to understand the adverse immigration consequences of her no contest plea for multiple reasons.

4

After reviewing these briefs and hearing argument, the trial court denied Rodriguez's motion. The court ruled that Rodriguez's existing formal probation status in an unrelated case made her ineligible to move under section 1473.7. The court also concluded that Rodriguez did not show prejudicial error, since she failed to prove ineffective assistance of counsel and likely would have pleaded no contest no matter what her knowledge in light of the overwhelming evidence of her guilt.

Rodriguez subsequently filed a timely notice of appeal.[5]

## DISCUSSION

### I.

### *The Enactment and Amendment of Section 1473.7*

The Legislature enacted section 1473.7 in 2016. We briefly lay out the historical circumstances giving rise to its enactment.

For many years, adverse immigration consequences of guilty pleas were considered indirect or collateral matters and, thus, trial courts were not required to advise defendants of them. (*People v. Mejia* (2019) 36 Cal.App.5th 859, 866-867 (*Mejia*).) In 1977, the Legislature enacted section 1016.5 (added by Stats. 1977, ch. 1088, § 1), which requires trial courts to advise criminal defendants, "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission

---

[5] The trial court denied Rodriguez's request for a certificate of probable cause, but Rodriguez does not need such a certificate to maintain her appeal. (§ 1473.7, subd. (f) ["An order granting or denying the motion is appealable under subdivision (b) of Section 1237 as an order after judgment affecting the substantial rights of the party"]; see also *People v. Arriaga (*2014) 58 Cal.4th 950, 960 [no certificate required for an appeal from a denial of a section 1016.5 motion to vacate a conviction].) The People do not contend otherwise.

5

to the United States, or denial of naturalization pursuant to the laws of the United States." (§ 1016.5, subd. (a).) Defense attorneys, however, were still under no particular duty to discuss these potential adverse immigration consequences with their clients, although an affirmative misrepresentation about them could constitute ineffective assistance. (*Mejia*, at p. 867.) Thus, unless a defendant actually inquired about immigration consequences, "counsel could generally rely on the court's immigration advisement." (*Ibid*.)

In 2010, the United States Supreme Court issued *Padilla v. Kentucky* (2010) 559 U.S. 356 (*Padilla*). It held that an attorney is constitutionally ineffective under the Sixth Amendment if he or she fails to advise a client-defendant of the actual or potential adverse immigration consequences of pleading guilty to a criminal charge. In 2015, the California Legislature enacted section 1016.3, which essentially codified the holding of *Padilla* by requiring defense counsel to "provide accurate and affirmative advice about the immigration consequences of a proposed disposition" and, when consistent with the defendant's informed consent and with professional standards, "defend against those consequences." (2015 Stats., ch. 705, § 2, eff. Jan. 1, 2016.)

In the meanwhile, however, the Supreme Court, in *Chaidez v. United States* (2013) 568 U.S. 342, had held *Padilla* is *not* retroactive. Thus, *Padilla* does not provide grounds for vacating a conviction that was final prior to 2010 by a defendant who was not properly advised by counsel of the actual or potential adverse immigration consequences of a guilty or no contest plea.

In 2016, the California Legislature adopted section 1473.7, effective January 1, 2017. Section 1473.7, subdivision (a) as originally written "creat[ed] a mechanism to allow individuals who are no longer imprisoned to move to vacate a conviction or sentence on the ground that '[t]he conviction or

6

sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.' " (*People v. Rodriguez* (2021) 60 Cal.App.5th 995, 1002 (*Rodriguez*), quoting former section 1473.7, subd. (a)(1); Stats. 2016, ch. 739, § 1.) Former section 1473.7, subdivision (e)(1) provided (and continues to provide), "The court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a)." (Stats. 2016, ch. 739, § 1; § 1473.7, subd. (e)(1).) Further, "If the court grants the motion to vacate a conviction or sentence obtained through a plea of guilty or nolo contendere, the court shall allow the moving party to withdraw the plea." (Stats. 2016, ch. 739, § 1; § 1473.7, subd. (e)(3).)

"As explained in the report of the Senate Committee on Public Safety when considering the bill that became former section 1473.7 (Sen. Com. on Pub. Safety, Rep. on Assem. Bill No. 813 (2015-2016 Reg. Sess.) June 22, 2015 (Pub. Safety, Rep. on Assem. Bill No. 813)), the purpose of the legislation was to 'fill a gap in California criminal procedure' (Pub. Safety, Rep. on Assem. Bill No. 813, at p. 5) by providing a means to challenge a conviction by a person facing possible deportation who is no longer in criminal custody and thus for whom a petition for a writ of habeas corpus is not available: 'California lags far behind the rest of the country in its failure to provide its residents with a means of challenging unlawful convictions after their criminal sentences have been served. . . . [¶] This omission has a particularly devastating impact on California's immigrant community . . . . Many immigrants suffer convictions without having any idea that their criminal record will, at some point in the future, result in

7

mandatory immigration imprisonment and deportation, permanently separating families. [¶] . . . Challenging the unlawful criminal conviction is often the only remedy available to allow immigrants an opportunity to remain with their families in the United States. Yet, in California, affected individuals have no way of challenging their unjust convictions once probation ends, because they no longer satisfy habeas corpus' strict custody requirements.' (Pub. Safety, Rep. on Assem. Bill No. 813 at pp. 4-5.) The Senate report continued, 'This bill creates a new mechanism for post-conviction relief for a person who is no longer in actual or constructive custody. Specifically, it allows a person to move to vacate a conviction due to error affecting his or her ability to meaningfully understand, defend against, or knowingly accept the actual or potential immigration consequences of the conviction.' (Public Safety, Rep. on Assem. Bill No. 813 at p. 6.)" (*People v. Fryhaat* (2019) 35 Cal.App.5th 969, 976-977.)

Unlike the *Padilla* rule, Section 1473.7 applies retroactively, allowing challenges to pleas entered into before it was adopted. (*People v. Perez* (2018) 19 Cal.App.5th 818, 824-829; *People v. Espinoza* (2018) 27 Cal.App.5th 908, 912-914; *People v. Tapia* (2018) 26 Cal.App.5th 942, 949; see *People v. Morales* (2018) 25 Cal.App.5th 502 (*Morales*) [granting section 1473.7 motion of party who pleaded and served time for a crime in 2002].)

California courts initially interpreted section 1473.7 to require defendants to prove ineffective assistance of counsel, following an analysis like that in *Padilla*. "California courts uniformly assumed . . . that moving parties who claim prejudicial error was caused by having received erroneous or inadequate information from counsel, must demonstrate that counsel's performance fell below an objective standard of reasonableness under prevailing norms, as well as a reasonable probability of a different outcome if

counsel had rendered ineffective assistance." (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1005-1006 (*Camacho*).)

In 2018, the Legislature amended section 1473.7, effective January 1, 2019 (Stats. 2018, ch. 825, § 2), clarifying that the judicial interpretation of section 1473.7 to require a showing of ineffective assistance of counsel was not what it had intended. (See Stats. 2018, ch. 825, § 1, subd. (b); see *Camacho, supra*, 32 Cal.App.5th at p. 1007.) The Legislature added this sentence to the end of the 2018 version of section 1473.7, subdivision (a)(1): "A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (Stats. 2018, ch. 825, § 2)

This amended version of section 1473.7 governed when the trial court considered Rodriguez's motion to vacate her conviction in 2020.[6] "[T]he Legislature's declarations included the following: '(c) This measure shall be interpreted in the interests of justice and consistent with the findings and declarations made in Section 1016.2 of the Penal Code'; and, '(d) The State of California has an interest in ensuring that a person prosecuted in state court does not suffer penalties or adverse consequences as a result of a legally invalid conviction.' (Stats. 2018, ch. 825, § 1(c) & (d).)" (*Camacho, supra*, 32 Cal.App.5th at p. 1007.)

The declarations in section 1016.2 that the Legislature reiterated as the underpinnings for interpretation of section 1473.7, include that:

"[In *Padilla*] the United States Supreme Court found that for noncitizens, deportation is an integral part of the penalty imposed for

---

[6] The Legislature subsequently amended section 1473.7 again, as part of the California Racial Justice Act of 2020, to provide relief to persons who could show their conviction or sentence was based on race, ethnicity, or national origin in violation of section 745, subd. (a). (Stats. 2020, ch. 317, § 5.) That amendment is not relevant to this appeal.

9

criminal convictions" and "may be by far the most serious penalty flowing from the conviction" (§ 1016.2, subd. (c));

"With an accurate understanding of immigration consequences, many noncitizen defendants are able to plead to a conviction and sentence that satisfy the prosecution and court, but that have no, or fewer, adverse immigration consequences than the original charge" (§ 1016.2, subd. (d));

"Defendants who are misadvised or not advised at all of the immigration consequences of criminal charges often suffer irreparable damage to their current or potential lawful immigration status, resulting in penalties such as mandatory detention, deportation, and permanent separation from close family" (§ 1016.2, subd. (e));

"In immigration proceedings, there is no court-appointed right to counsel and as a result, the majority of detained immigrants go unrepresented.  Immigration judges often lack the power to consider whether the person should remain in the United States in light of equitable factors such as serious hardship to United States citizen family members, length of time living in the United States, or rehabilitation" (§ 1016.2, subd. (f)); and

"The immigration consequences of criminal convictions have a particularly strong impact in California.  One out of every four persons living in the state is foreign-born.  One out of every two children lives in a household headed by at least one foreign-born person.  The majority of these children are United States citizens.  It is estimated that 50,000 parents of California United States citizen children were deported in a little over two years.  Once a person is deported, especially after a criminal conviction, it is extremely unlikely that he or she ever is permitted to return." (§ 1016.2, subd. (g).)

The 2018 amendment of section 1473.7 "made it easier to retroactively challenge convictions" where the defendant was not properly advised of immigration consequences by removing judicially created "barriers" to relief. (*People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1066-1067.)  Since the 2018 amendment, courts have adopted a more expansive interpretation of section 1473.7, subdivision (a)(1).  For example, several have held that, under the statute as amended, the error need not be one made by defense counsel or the court but may be one made by *the moving party herself* if supported by contemporaneous evidence.  (*Mejia, supra*, 36 Cal.App.5th at pp. 870-871.)[7] Several have held the "prejudice component of the amended statute" does not require a showing that, if the moving party had rejected the plea and gone to trial, there is a reasonable probability he or she would have obtained a more favorable result.  Rather, prejudice is established if the movant shows "there is a *reasonable probability* [he or she] would not have pleaded guilty–and would have risked going to trial (even if only to figuratively throw a 'Hail Mary')—had [he or she] known the guilty plea would result in mandatory and dire immigration consequences." (*Id.* at p. 871 [agreeing with *Camacho, supra*, 32 Cal.App.5th at pp. 1009-1011]; accord, *Ruiz, supra*, 49 Cal.App.5th at pp. 1066-1067.)  The California Supreme Court recently interpreted section 1473.7 to adopt this prejudice standard.  (*Vivar, supra*, 11 Cal.5th at pp. 529-530.)

---

[7] See also *Camacho, supra*, 32 Cal.App.5th at pp. 1008-1009; *People v. Jung* (2020) 59 Cal.App.5th 842, 846, disapproved on other grounds in *Vivar, supra*, 11 Cal.5th at p. 526, fn. 4*; People v. Rodriguez, supra*, 60 Cal.App.5th at p. 1005.)

## II.

### *We Independently Review the Trial Court's Denial of Rodriguez's Motion to Vacate Her Conviction.*

The parties agree that we should independently review the trial court's denial of Rodriguez's motion, both relying on *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1132 [appellate court should "exercise our independent judgment to decide whether the facts demonstrate deficient performance and resulting prejudice"].)  Since they submitted their briefs, the California Supreme Court held in *Vivar*, *supra*, 11 Cal.5th 510 that appellate courts should independently review section 1473.7 rulings on motions brought under subdivision (a) that rely entirely on documentary evidence (*Vivar*, at pp. 527-528), as is the case here.  Specifically, the court held that, while we "may not simply second-guess factual findings that are based on the trial court's own observations . . . , [w]here . . . facts derive entirely from written declarations and other documents, . . . there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, the '[t]rial court and [the appellate] court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding.  [Citation.]  Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Ibid*.)  The court reasoned that "[a] standard of independent review . . . is most consistent with section 1473.7's purpose:  to offer relief to those persons who suffered 'prejudicial error' but are 'no longer imprisoned or restrained' and for that reason alone are unable to pursue relief on habeas corpus.  (Legis. Counsel's Dig., Assem. Bill No. 813 (2015-2016 Reg. Sess.).)" (*Id*. at p. 525.)

All the evidence submitted to the trial court regarding Rodriguez's motion was documentary in nature.  Therefore, following *Vivar*, we conduct

an independent review of the motion and are not required to defer to the trial court's findings or rulings.

## III.

### *The Trial Court Erred in Holding Rodriguez's Probation Status for an Unrelated Conviction Barred Her Section 1473.7 Motion.*

Rodriguez and the People agree that the trial court erred in ruling that Rodriguez was barred under the terms of former section 1473.7 from moving to vacate her 2005 conviction when she was on probation for another, unrelated conviction.  In this case of first impression, we agree that the trial court erred as a matter of law.

The People did not argue below that Rodriguez was barred from bringing her 2020 motion because she then was on probation for another, unrelated conviction.  Nonetheless, the trial court so concluded as its first reason for denying Rodriguez's motion.  It apparently relied on the opening provision of section 1473.7, subdivision (a), which states in relevant part, "A person *who is no longer in criminal custody* may file a motion to vacate a conviction" on the ground asserted by Rodriguez here.  (Stats. 2018, ch. 825, § 2, italics added.)

As we wrote recently in interpreting section 1473.7, "Our interpretation of the statute begins with, but is not necessarily limited to, its words. [Citation.]  'Statutory interpretation is a question of law [citation] in which we ascertain the Legislature's intent " 'with a view to effectuating the purpose of the statute, and construe the words of the statute in the context of the statutory framework as a whole.' " '  [Citation.]  'We give the words of the statute "a plain and commonsense meaning" unless the statute specifically defines the words to give them a special meaning.'  [Citation.]

" ' "If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute

13

controls." ' [Citation.]  Nonetheless, '[w]e may also look to a number of extrinsic aids, including the statute's legislative history, to assist us in our interpretation.' [Citation.]  'Courts seek to ascertain the intent of the Legislature for a reason—"to effectuate the purpose of the law." ' [Citation.] In the end, we should avoid interpreting a statute in a manner which would both frustrate its purpose and lead to absurd results.  [Citation.]" (*Morales*, *supra*, 25 Cal.App.5th at p. 509.)

Section 1473.7's directive that "[a] person who is no longer in criminal custody may file a motion to vacate a conviction" does not on its face conclusively indicate whether a person may move to vacate a particular conviction at a time when that person is on probation for another, unrelated conviction (probation being a form of constructive custody (*People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 220-221).  Nonetheless, the language of this directive, when considered with the remainder of section 1473.7, the Legislature's purpose for the statute and the larger statutory framework, indicates the Legislature intended this clause to mean a person may file a motion to vacate a conviction provided the person is no longer in criminal custody *for that particular conviction*, and nothing more.

First, the language of the directive, i.e., "a person who is *no longer* in criminal custody" (italics added), presupposes the movant was once in criminal custody.  The only reason for the Legislature to have presumed a movant will necessarily have served time is that the statute is providing potential relief from a plea agreement and resulting conviction in a criminal matter.  The language regarding criminal custody is at minimum susceptible to the interpretation that "criminal custody" refers to custody resulting from the plea and conviction being challenged.

14

Second, to interpret the statute otherwise, as allowing those for whom a conviction is invalid to challenge it only if they are not in custody for an unrelated offense, would thwart the Legislature's purpose of providing a means for a person who cannot seek habeas corpus to challenge a conviction on an offense that had adverse immigration consequences. Habeas corpus provides a mechanism by which a person who is detained may challenge the legality or the conditions of that detention. As our Supreme Court stated in *People v. Villa* (2009) 45 Cal.4th 1063 (*Villa*), " 'once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual "in custody" for the purposes of a habeas attack upon it.' " (*Id*. at p. 1071; see § 1473, subd. (a) ["A person unlawfully imprisoned or restrained of their liberty, under any pretense, may prosecute a writ of habeas corpus *to inquire into the cause of the imprisonment or restraint*"], italics added.)

The court in *Villa* held that an individual who was the subject of deportation proceedings by the federal government, which did not seek to deport him until 16 years after he was convicted and long after he had completed his probation, could not obtain relief on habeas corpus because he was "no longer in California custody as a result of his 1989 conviction." (*Villa, supra,* 45 Cal.4th at p. 1066.) As the court explained, "The key prerequisite to gaining relief on habeas corpus is a petitioner's custody. Thus, an individual in custody for a crime (or alleged crime) may—within limits—challenge the legality of that detention on habeas corpus." (*Id*. at p. 1069.) "While the continuing existence of the collateral consequences of a criminal conviction may be relevant to determining a mootness claim [citation], 'once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to

15

render an individual "in custody" for the purposes of a habeas attack upon it' [Citation.]" (*Id*. at p. 1071.)

When the Legislature enacted section 1473.7, the initiating legislative committee expressed concern about the limitations described in *Villa* that make habeas corpus unavailable for immigrants no longer in custody on the deportable offense.[8] (*Morales*, *supra*, 25 Cal.App.5th at pp. 512-514 & fn. 8.) Under the trial court's interpretation of section 1473.7, movants completing sentences on nondeportable offenses would be deprived of any remedy where, as here, the federal government proceeds to deport them while they are under restraint on a nondeportable offense. Such an interpretation would leave open part of the " 'gap in California criminal procedure' " the Legislature sought to close and deny some immigrants of the opportunity the Legislature created for challenging invalid convictions that can no longer be challenged by habeas corpus.[9] To adopt that interpretation would contravene the Legislature's directive that section 1473.7 "shall be interpreted in the interests of justice and consistent with the findings made in Section 1016.2 of the Penal Code." (Stats. 2018, ch. 825, § 1, subd. (c).) This we will not do.

We conclude the Legislature did not intend to bar persons from moving under section 1473.7 to vacate a conviction at a time when they are in

---

[8] In *Villa*, the petitioner was not in state custody but in federal custody only, while awaiting deportation. However, the court's discussion indicates there are two components to the "in custody" requirement for habeas, (1) that the petitioner be in actual or constructive custody of the state, and (2) that such custody be a result of the allegedly unlawful conviction or sentence.

[9] As the People acknowledge, the holding in *People v. Cruz-Lopez, supra,* 27 Cal.App.5th 212 (and likewise *People v. DeJesus, supra,* 37 Cal.App.5th at pp. 1131-1132) that a movant under section 1473.7 could not challenge his conviction on the deportable offense while still on probation (and thus in constructive state custody) *for that offense* has no bearing here. In such a circumstance, a movant may still avail himself of habeas corpus.

16

custody for another, unrelated conviction. The trial court erred as a matter of law in concluding otherwise to deny Rodriguez's motion.

## IV.

### *Rodriguez Showed It Was Reasonably Probable She Would Not Have Pleaded No Contest but for Prejudicial Error.*

The parties agree that possession of a controlled substance for sale is, and was at the time of Rodriguez's plea in 2005, an "aggravated felony" under federal law,[10] making deportation and exclusion from readmission mandatory.[11] It is also undisputed that in 2020, when she filed her motion to vacate her possession for sale conviction, Rodriguez had been taken into ICE custody and faced mandatory deportation and a bar from readmission as a result of that conviction. The People do not contest Rodriguez's showing (or defend the trial court's contrary finding) that Rodriguez entered her no contest plea to the possession for sale charge in 2005 based on an error that damaged her ability to understand the actual and potential adverse immigration consequences of that plea. In this appeal, the parties' dispute is narrowed to whether the error was prejudicial.

Rodriguez argues the trial court erred in ruling she failed to show it was reasonably probable she would not have entered her 2005 no contest plea

---

[10] See 8 U.S.C. § 1101(a)(43)(B); *United States v. Andrino-Carillo* (9th Cir. 1995) 63 F.3d 922, 925 (Congress defined trafficking in controlled substance as aggravated felony in the Immigration and Nationality Technical Corrections Act of 1994, Pub. L. No. 103-416, § 222(a), 108 Stat. 4305, 4320-22 (1994)); *Moncrieffe v. Holder* (2013) 569 U.S. 184, 188 (drug trafficking felony punishable by more than one year's imprisonment counts as "aggravated felony" for immigration purposes).

[11] See 8 U.S.C. § 1227(a)(2(A)(iii) (mandatory deportation for aggravated felonies); *United States v. Watson* (1st Cir. 2004) 386 F.3d 304, 305 (witness's "conviction for an aggravated felony exposed him to mandatory deportation" under 8 U.S.C. § 1227(a)(2)(A)(iii)).

to the possession for sale charge but for an error that prevented her from knowing it would lead to her mandatory deportation. We agree.

## A. Relevant Proceedings Below

In January 2020, Rodriguez filed her section 1473.7 motion to vacate her 2005 possession for sale conviction. In her accompanying declaration, she stated, "I came to the United States when I was one year old. I grew up in Napa and have lived here all my life. I went to Westwood Elementary School (now NVLA), Silverado Middle School, and Napa High School. In 2005, as today, my family and my entire life are in the United States. In 2005 I was in a committed relationship and had two children here (then aged one and three) living with us in Napa, and I was pregnant with my third child. I now have four children here who are all U.S. citizens. My mother is a U.S. citizen, and my father is a lawful permanent resident who is pending naturalization as a citizen. I have five sisters who all live in the United States. I have never lived in Mexico, and I have no family ties or community in Mexico."

The declaration further stated, "At no time before entry of my [no contest] plea [in 2005] did my attorney or the Court explain to me that a conviction of [Health and Safety Code section] 11378 is an 'aggravated felony' for purposes of United States immigration law, a conviction which guarantees deportability, exclusion from the United States, a serious federal felony upon return, and denial of naturalization." According to Rodriguez, she pleaded no contest to the possession for sale charge the day after being jailed, apparently for failing to appear at a hearing after being released on her own recognizance. After noting she had a co-defendant in the case, she contended she was not guilty of the possession for sale offense, but "entered a no contest plea and accepted the plea deal because I had been taken into custody the day before and I was desperate to get out of jail and return to my family as

18

soon as possible." She declared that she "would never have entered the plea of no contest if I had been aware of the automatic immigration consequences of such a plea; that is, that the plea would separate me forever from my children, my parents, my entire family, and the only community I have ever known." After she was taken into ICE custody in September 2019 and consulted an immigration lawyer, she learned for the first time that her conviction of a violation of Health and Safety Code section 11378 "would be used by the government to deport and exclude me from readmission into the United States, and to prevent me from ever becoming a citizen." In January 2020, Rodriguez filed her motion. She was represented by counsel but was unable to attend the hearing because she was in ICE custody.

Rodriguez also submitted a declaration by Mervyn Lernhart, Jr., the supervising attorney of the conflict public defender office in 2005. Lernhart stated he had maintained custody and control of the closed case files from that year. Rodriguez's case had been handled by an attorney who "wrote extensive file notes during her representation of Ms. Rodriguez. There is no indication in any of the file notes that [the representing attorney] ever examined the immigration consequences that could or would result from the entry of a guilty or no contest plea to a violation of [Health and Safety Code] section 11378 in this case, nor that she ever advised Ms. Rodriguez of any such consequences." Lernhart added, "As a career defense attorney, I will state that prior to 2010 and the U.S. Supreme Court's opinion in Padilla v. Kentucky, 559 U.S. 356 (2010) [holding that a lawyer is constitutionally ineffective for Sixth Amendment purposes if he or she fails to advise a client of the potential immigration consequences of pleading guilty to a criminal charge], it was not the common practice of defense counsel to research or

19

advise clients regarding the specific immigration consequences of a particular plea."

Rodriguez also submitted a declaration by the attorney representing her in removal proceedings, Aaron M. Morrison. Morrison stated Ms. Rodriguez is currently married to a United States citizen; her mother and father are a U.S. citizen and a lawful permanent resident, respectively; her four siblings are U.S. citizens; and all of her immediate family members reside in the United States. This includes her four children, aged 8 to 18, who were born in the United States and are U.S. citizens. Morrison explained that Rodriguez's 2005 possession for sale conviction was "classified as an 'aggravated felony' under the Immigration and Naturalization Act ('INA')," which rendered Rodriguez, as a non-citizen, deportable and ineligible for virtually all forms of discretionary immigration relief and benefits and rendered her inadmissible to the United States even though she was married to a United States citizen. Also, in 2005 Rodriguez was eligible to adjust her immigration status without leaving the country as the beneficiary of a pending family-based visa petition filed by her mother on her behalf in 1995. Her conviction of possession for sale disqualified her from obtaining this relief.

The People opposed Rodriguez's motion, contending she did not establish prejudicial error based on 2005 police and probation reports, as well as Rodriguez's 2005 plea form, which they attached to their opposition. These documents indicate police initially pulled Rodriguez over in March 2005 for driving an unregistered car that displayed false registration tags. A male passenger with her consented to be searched, leading to the police discovery of a methamphetamine pipe in his pants pocket. Upon questioning, Rodriguez said a small amount of methamphetamine was in a

"zipper purse" near the driver's seat.  Inside the purse, police found two Ziploc bags containing methamphetamine and coin-size Ziploc bags.  In the car, they also found a gram scale and what appeared to be Rodriguez's backpack, which contained a Ziploc bag of methamphetamine and $500 in cash.  A total of 4.8 grams of methamphetamine were found to be in Rodriguez's possession.  Two Ziploc bags containing methamphetamine were also found in the passenger's pants coin pocket.

After being advised of her *Miranda* rights,[12] Rodriguez admitted to selling methamphetamine and to having a smoking pipe on her person.  Police seized the pipe and her cell phone, which rang constantly during the stop and indicated 51 calls had been missed, and arrested Rodriguez.  Upon further questioning, Rodriguez told police the methamphetamine found in her possession was for her own use and the $500 in cash was from her work cleaning houses and babysitting.  She admitted having sold drugs to about five friends, to whom she delivered $20 bags of methamphetamine when they called her.  She said she sold a $20 bag of methamphetamine to a friend in Napa that night, more that night in Vallejo, and about five bags the night before in Napa to close friends.  She told police a friend gave her the coin-size Ziploc bags in case she needed them and that she was returning the gram scale to its owner, although she could not say where he lived.

In their opposition to Rodriguez's 2020 motion, the People also noted that, as part of the negotiated disposition of her case, Rodriguez initialed a statement on her plea form that states:  "I understand that, if I am not a United States citizen, a plea of guilty or no contest could result in my deportation, exclusion from admission to this country, or denial of

---

[12]  *Miranda v. Arizona* (1966) 384 U.S. 436.

21

naturalization." Further, the form contains a signed declaration by Rodriguez's attorney in 2005 stating that she explained the "consequences of the plea[s]" to Rodriguez.

The People further contended that in 2020, Rodriguez had five open criminal cases, including a charged strike offense for assault with a deadly weapon allegedly committed while she was on grants of probation for petty theft and driving with a suspended license. Further, she was on a grant of deferred entry of judgment for possession of a methamphetamine pipe, was convicted in 2005 of felony possession of forged checks and was convicted in 2016 of a misdemeanor offense.

Based on this information, the People argued Rodriguez failed to show that a prejudicial error damaged her ability to understand the actual or potential adverse immigration consequences of her 2005 no contest plea to possession for sale. First, her initialing of the 2005 plea form statement and her then-attorney's declaration established that she had been sufficiently informed that her plea could have possible adverse immigration consequences. Second, her 2020 declaration statement that she had not been advised of these adverse immigration consequences in 2005 was not credible because she also stated that she was not guilty of possession for sale despite having confessed to police in 2005 that she was selling methamphetamine to friends. Third, her contention that she would not have entered the no contest plea if she had known its adverse immigration consequences was belied by her criminal record after 2005, which showed her repeated willingness to act in ways that jeopardized her residency in the United States. Fourth, there was no reason to believe she would have rejected the 2005 plea deal because, given the overwhelming evidence of her guilt, it was a better result than a

22

conviction after a trial that would have exposed her to the same adverse immigration consequences.

At the hearing, in addition to his previous arguments, Rodriguez's counsel contended the court should believe Rodriguez's assertion that she would not have pleaded no contest to possession for sale if she had known it would cause her deportation because in 2005 she had honestly admitted to police, against her interest, that she sold a modest amount of methamphetamine to friends; a relatively small amount of methamphetamine was found in her possession, supporting her assertion that it was for her personal use; and she was unlikely to have gone to prison after a trial in light of her modest criminal record and the circumstances of the case. He argued Rodriguez had a "good case" for which she could have negotiated the same disposition on an "immigration safe" plea. Counsel further argued the "vague" plea advisement about possible immigration consequences contained in the 2005 plea form was insufficient to advise Rodriguez of the adverse immigration consequences of her plea. He acknowledged that, as of the 2020 hearing, Rodriguez was on probation for a petty theft.

In addition to his previous arguments, the prosecutor contended it was unclear that Rodriguez's deportation for her 2005 possession for sale conviction was "automatic," since she had not been detained for deportation until several months before the 2020 hearing. This suggested that "if she hadn't continued to tangle with the law she might not have become under federal custody now."

After hearing argument, the court denied Rodriguez's motion. It initially focused on her then-existing probation status, concluding it meant Rodriguez "may still be in custody for purposes of [section] 1473.7," which

23

would prohibit her motion. It also concluded for several reasons that Rodriguez failed to show it was reasonably probable that she would not have pleaded no contest to the possession for sale charge due to an error that damaged her understanding of the plea's adverse immigration consequences.

First, the court, construing Rodriguez's motion as probably arguing ineffective assistance of counsel, found no ineffective assistance because the United States Supreme Court did not establish a counsel's duty to inform a client about specific immigration consequences until five years later in *Padilla, supra,* 559 U.S. 356.[13]

Second, the court found Rodriguez did not show her 2005 attorney insufficiently advised her of the actual or potential adverse immigration consequences of her plea for two reasons: Rodriguez did not submit an affidavit from that attorney indicating a failure to advise, and a 2005 probation department sentencing report indicated Rodriguez misrepresented to the department that she was a United States citizen, suggesting that she "may have told" her lawyer the same thing. The court apparently concluded this misrepresentation eliminated any reason for her attorney to inform her of the adverse immigration consequences of her plea.

Third, the court found Rodriguez had little likelihood of success at a trial in 2005 in light of her "full confession to law enforcement about selling methamphetamine to friends" and the $500 and scale found in her possession. It doubted a prosecutor would have allowed her to plead to simple possession in light of her confession. The court concluded, "And so I

---

[13] Finding no ineffective assistance of counsel, the court stated, "And I'm not certain if [Rodriguez's 2020 attorney] is alleging I.A.C. It sounds like maybe he is. And the court can consider whether the [2005 attorney], there is no way she could have known that the Sixth Amendment required a criminal defense attorney to advise of immigration consequences way back in 2005. The law didn't change regarding that requirement until 2010."

24

think the outcome that she got . . . is probably pretty consistent with the evidence that the People had at the time. And I think the break she got was that she was released [from jail] . . . . That's the benefit she got. That's the chance she was willing to take. But I don't see that she did that without any real understanding of the possible immigration consequences of this case because, A, I question whether she ever told her attorney at the time that she was not a U.S. citizen, and, B, I don't know that there was any I.A.C. by her attorney regarding her decision to or her lack of admonishment regarding any possible immigration consequence." The court continued, "And again given the nature of the charges in this case and the evidence that was stacked up against [Rodriguez], I don't see that this was a case that she was eager to defend against despite her affidavit to the contrary as part of this motion today." The court also agreed with the prosecutor that Rodriguez "kind of created her own bed" by continuing to engage in criminal activity after 2005 that could also cause her adverse immigration consequences. "So," the court continued, "I don't think that this is probably the case that's driving her concerns at this point. So I'm going to deny the motion."

## B. Relevant Legal Standards

As we have already discussed, since the 2018 amendment of section 1473.7, "a person's own error in not understanding or knowingly accepting that a guilty plea will have certain and adverse immigration consequences may constitute prejudicial error entitling the person to relief under section 1473.7." (*People v. Jung*, *supra*, 59 Cal.App.5th at p. 846; *Mejia*, *supra*, 36 Cal.App.5th at p. 871 ["the focus of the inquiry in a section 1473.7 motion is on the '*defendant's own error* in . . . not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States' "]; *Rodriguez*, *supra*, 60 Cal.App.5th at

25

p. 1005 [defendant's lack of awareness of a change in his sentence "constituted a prejudicial error"].)

Further, as our Supreme Court has explained, a person moving under section 1473.7 to vacate a conviction must also show that the error is prejudicial. (*Vivar, supra*, 11 Cal.5th at p. 528.) "Although the statute doesn't itself define what 'prejudicial' means, we can glean the meaning from its context." (*Ibid.*) Relying on other immigration-related statutes in which it had interpreted similar prejudice requirements, the court held that "showing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences. When courts assess whether a [movant] has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Id.* at pp. 529-530.)

Also, movants under section 1473.7 must provide evidence corroborating their assertions. " 'Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.' " (*People v. Ogunmowo (*2018) 23 Cal.App.5th 67, 78, quoting *Jae Lee v. United States* (2017) 582 U.S. ___, 137 S.Ct. 1958, 1967 (*Lee*) [discussing how to evaluate the "reasonable probability" that a defendant

26

who would have rejected a plea deal but for counsel's erroneous advice about deportation in an ineffective assistance of counsel case].)

**C. Analysis**

The trial court's reasoning for concluding Rodriguez did not establish an error under section 1473.7 raises concerns that merit discussion even though the parties do not dispute that error was shown.

First, the court suggested Rodriguez's motion was based on ineffective assistance of counsel even though Rodriguez did *not* argue ineffective assistance in her motion or at the hearing. Instead, she asserted that her attorney did not inform her, and she did not know, the specific and dire consequences of her plea. Since the 2018 amendment, our courts have consistently held that prejudicial error may be based on the movant's own misunderstanding and that a movant need not prove ineffective assistance.

Second, the court relied on her purported misrepresentation to the probation department in 2005 that she was a United States citizen. The probation department's reference is contained in a social history summary that does not identify the source. The finding of misrepresentation was speculative.

Third, the court rejected Rodriguez's assertion that she was not informed of the adverse immigration consequences of her plea because the attorney who represented her in 2005 did not submit an affidavit. An affidavit of counsel is not required as long as there is some contemporary corroborating evidence, which there is in this case. Lernhart, the custodian of Rodriguez's file, declared it contains extensive notes but no indication that the attorney researched or discussed with Rodriguez the adverse immigration consequences of her plea. Further, at the time of Rodriguez's plea, Lernhart was the supervising attorney of the public defender's office where her counsel

27

was employed. He stated that prior to the *Padilla* decision in 2010, it was "not the common practice of defense counsel to research or advise clients regarding the specific immigration consequences of a particular plea."

Fourth, after commenting that Rodriguez had created "her own bed" since the conviction by her continued criminal behavior, the court concluded, "I don't think that this [2005 possession for sale case] is probably the case that's driving her concerns at this point." We understand the court's concern about Rodriguez's continued criminal behavior. Nevertheless, what might be her "driving concerns" in 2020 is irrelevant to whether she entered a plea in 2005 because of an error or would not have entered the plea but for that error.

Having addressed these concerns, we now turn to the primary issue in dispute, whether the trial court erred in holding Rodriguez did not show prejudice. We address this issue keeping in mind that, as we have discussed, under *Vivar*, we are not required to defer to the trial court's findings and conclusions, since they are based on a paper record. (See *Vivar*, *supra*, 11 Cal.5th at pp. 527-528.)

We cannot agree with the trial court's conclusion, based on the totality of the circumstances, that Rodriguez failed to show a reasonable probability that she would have rejected the plea and would have sought a different bargain with less drastic immigration consequences if she had known the consequences of the plea she entered. The trial court relied heavily on the potential outcome of Rodriguez's trial and gave short shrift to the evidence of her lifelong residence in and connection to the United States and the presence of her family here. It disregarded her assertion that she entered the plea because she had been taken into custody, was pregnant, and had young children at home.

28

As *Vivar* instructs, "Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar, supra*, 11 Cal.5th at pp. 529-530.) As one appellate court reviewing a section 1473.7 ruling observed, quoting the United States Supreme Court, " '[C]ommon sense . . . recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea. [Citation.]' [Citation.] In *Lee*, the court found that the defendant had demonstrated a reasonable probability that he 'would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a "Hail Mary" at trial.' " (*Camacho, supra*, 32 Cal.App.5th at pp. 1010-1011, quoting *Lee, supra*, 582 U.S. ___ [137 S.Ct. at pp. 1966, 1967].)

Our analysis rests on the meaning of "reasonably probable." It does not mean more likely than not. We have not found an opinion that discusses its meaning in evaluating a section 1473.7 ruling, but our Supreme Court and appellate courts have repeatedly explained it in other cases evaluating the impact of an error, including with regard to ineffective assistance of counsel claims. As we most recently observed in evaluating the impact of an evidentiary error under state law, "A 'reasonable probability' 'does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*.' [Citation.] It 'does not mean "more likely than not," but merely "probability sufficient to undermine confidence in the outcome." ' [Citations.] Therefore, reversal is necessary when it cannot be determined whether or not the error affected the result, as in such a case there 'exists . . . at least such

an equal balance of reasonable probabilities' ' "that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of error." ' [Citation.]" (*People v. Hardy* (2021) 65 Cal.App.5th 312, 329-330; see also *People v. Beck and Cruz* (2019) 8 Cal.5th 548, 668 [a reasonable probability of a different result is shown when the error " ' "undermines confidence in the outcome" ' "]; *People v. Mar* (2002) 28 Cal.4th 1201, 1225 [under the reasonable probability standard, "reversal is required when there exists 'at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result' "]; *People v. Mower* (2002) 28 Cal.4th 457, 484 [same].)

Rodriguez plainly met this "reasonable probability" standard. She presented evidence indicating it was at least equally and reasonably probable that in 2005, faced with certain deportation that would remove her from all that she knew and held dear if she pleaded no contest to possession for sale, she would have insisted on pleading no contest to a different, more immigration-neutral charge (whether it was realistic to insist on such a deal or not) or gambled on a "Hail Mary" trial.

We base this conclusion, first, on Rodriguez's deep, lifelong ties to the United States. Other courts have found such ties to be very persuasive. Rodriguez's ties to the United States are very similar to those considered by our Supreme Court in *Vivar*, such as: (1) Vivar, who as a lawful resident noncitizen of the United States, faced permanent deportation for a 2002 drug conviction under former Health and Safety Code section 11383 (*Vivar*, *supra*, 11 Cal.5th at pp. 516-517), and was brought to the United States at a very young age (*id.* at p. 516), just as Rodriguez was brought here as an infant; (2) Vivar's family was in the United States (*id.* at p. 517) just like Rodriguez's family, which as of 2005 included her mother, father and five sisters and her

30

own two children; (4) Vivar grew up in the United States and attended schools here (*id.* at pp. 517-518) just like Rodriguez, who attended primary, middle and high schools in Napa; (5) Vivar had been in the United States for decades (*id.* at p. 520) just like Rodriguez had been in California for virtually all of her 22 years; and (6) Vivar, like Rodriguez, indicated that he lacked meaningful ties to the country of his birth, Mexico (*id.* at p. 516). The Supreme Court summarized Vivar's extensive ties to the United States (and also cited correspondence Vivar wrote around the time he entered his plea) and concluded that the appellate court "neglected to explain why these facts at or near the time of Vivar's plea failed to provide adequate corroboration that he wouldn't have pleaded guilty had he known it would result in his deportation. Indeed, the court's analysis failed to mention these facts at all. This was error. In our view, these objective and contemporaneous facts corroborate, in a most convincing way, the statement in Vivar's declaration that he 'would never have plead[ed] [g]uilty' if his attorney had informed him of the plea's consequences. (See *Camacho*, [*supra,*] 32 Cal.App.5th at pp. 1101-1012 [finding prejudice where the defendant was brought to the United States as a child, had lived here for over 30 years, and his spouse and children were citizens]; accord, *Lee, supra,* [582] U.S. ___ [137 S.Ct. at p. 1968] [finding prejudice where the defendant was brought to the United States as a child, had lived here for nearly 30 years, and his parents were citizens].)" (*Id.* at p. 531; see also *People v. Espinoza, supra,* 27 Cal.App.5th at p. 917 ["Because defendant resided in the United States since he was four years old as a lawful permanent residence, his family resided in the United States, and he was employed as a maintenance supervisor at a Holiday Inn, it could be reasonably probable that defendant would have rejected any plea that would have mandated deportation"]; *People v. Ogunmowo, supra,*

31

23 Cal.App.5th at p. 73 [movant's declaration indicated he would have rejected plea deal, having moved across the globe and established his life in the United States].) Here, the trial court largely ignored the undisputed evidence of Rodriguez's deep, lifelong ties to the United States. This was error. It is compelling evidence that Rodriguez would not have pleaded no contest to a charge that led to her mandatory deportation to Mexico.

Further, while we agree with the trial court that there was ample evidence to support Rodriguez's possession for sale conviction, we disagree that she would neither have sought to obtain a more immigration-neutral plea deal nor risked going to trial if she had known of the dire immigration consequences of a possession for sale conviction, and instead would have pleaded no contest to that charge. The record does not indicate that in 2005 Rodriguez extensively trafficked in methamphetamine or had such a serious criminal record that the prosecution would necessarily have been unwilling to enter an immigration-neutral plea. Nor does it show Rodriguez was without any plausible defense. She could have claimed—as she implied in her declaration—that it was her companion, not Rodriguez, who intended to sell the methamphetamine found in her car, and she made admissions and pleaded no contest simply because she was desperate to get out of jail and return to her family as soon as possible. Also, she pleaded no contest not only to the charge of possession for sale, but also to the charge of transportation of methamphetamine (conviction of which no one argues would have led to her mandatory deportation). Under these circumstances, she may well have insisted that any plea deal involve her no contest plea to the transportation or another more immigration-neutral charge.

Second, the record indicates Rodriguez never tested the prosecution's resolve. Instead, she agreed to a plea deal the very next day after she was

jailed for apparently failing to appear at a hearing in her case because, she states in her 2020 declaration, she wanted "to return to her family as soon as possible," an assertion that is not disputed. In other words, she hardly negotiated, if at all, in order to return to her family, including her two small children, right away. Her desire to do so is a further indication that she would have done all she could to avoid pleading no contest to a charge that would lead to her mandatory deportation and separation from her family for the rest of her life.

Finally, in 2005 Rodriguez had only a modest criminal record that did not include any drug offenses. Therefore, she reasonably could have believed that even if she risked all on a "Hail Mary" trial she might in the end have received probation on similar terms to what she received by pleading no contest.

Given these circumstances, and in light of her deep, lifelong bonds in the United States, we fail to see how any court could confidently look back and conclude that if she had understood the consequences of her plea, Rodriguez would not have bargained for an immigration-neutral plea deal or risked going to trial in an effort to avoid certain deportation. We conclude it is reasonably probable that she would have. Therefore, we must reverse.

## DISPOSITION

The trial court's denial of Rodriguez's section 1473.7 motion is reversed and the matter is remanded to the trial court with instructions to grant the motion and vacate Rodriguez's 2005 possession of a controlled substance for sale conviction. (See *Camacho, supra*, 32 Cal.App.5th at p. 1012 ["The appropriate remedy is to direct the trial court to grant the motion"].)

_____
STEWART, J.

We concur.

_____
RICHMAN, Acting P.J.

_____
MILLER, J.

*People v. Rodriguez* (A159679)

34

Trial Court:     Napa County Superior Court

Trial Judge:     Hon. Elia Ortiz

Counsel:

L. Richard Braucher, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Eric D. Share and Katie L. Stowe, Deputy Attorneys General, for Plaintiff and Respondent.