Filed 7/24/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>v.<br><br>RUBEN ANAYA MORALES,<br><br>　　　　Defendant and Appellant. | No. A152530<br><br>(San Mateo County<br>Super. Ct. No. SC050563A) |

Appellant Ruben Anaya Morales was convicted of a 2002 drug offense, to which he pleaded no contest. He served his sentence, voluntarily departed the United States and reentered the country. In 2017, while residing in the United States, he filed a motion to vacate this conviction under the newly enacted Penal Code section 1473.7[1] as a part of his effort to obtain legal status via a "U visa." Morales contended that but for his conviction, his assistance in a 2009 law enforcement investigation would have made him eligible for a U visa, and that he pleaded no contest in 2002 only as a result of the ineffective assistance of his counsel, who failed to tell him his conviction would result in his deportation and inability to ever legally reenter the United States.

Section 1473.7, subdivision (a)(1) authorizes a noncitizen convicted of a crime upon pleading no contest who is now free from custody to prosecute a motion to vacate that conviction for ineffective assistance of counsel when the conviction has caused unforeseen actual or potential adverse immigration consequences. Morales filed exactly such a motion. Nonetheless, the superior court denied his motion without prejudice based on its interpretation of section 1437, subdivision (b), which addresses the timeliness and due diligence required of motions filed in the face of removal proceedings.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

1

Both Morales and the Attorney General contend the court ignored the plain terms of section 1473.7, subdivision (a)(1) and wrongly determined that section 1473.7, subdivision (b) eviscerates the broad authority granted by subdivision (a)(1) and bars a noncitizen from bringing *any* motion under section 1473.7 until after the entry of a final removal order. We agree. The superior court's holding is an untenable construction of the statute that is contradicted by the statute's plain language and its legislative history, and would produce absurd results. Therefore, we reverse the trial court's decision and remand for further proceedings consistent with this opinion.

## BACKGROUND

In January 2002, the San Mateo County District Attorney charged Morales in an amended information with felony possession for sale of a controlled substance, methamphetamine (Health & Safety Code, § 11378), and the felony transportation, importation, and selling of a controlled substance, also methamphetamine (*id.*, § 11379). Both counts also included weight enhancement allegations. As part of a negotiated disposition, Morales, represented by counsel, entered a no contest plea to possession for sale of a controlled substance. He also admitted the truth of the accompanying weight enhancement allegation, but the court later struck it and dismissed the transportation count. It sentenced Morales to a three-year prison term, with 199 days of credits. Morales served his sentence, voluntarily departed the United States for Mexico in the face of deportation and reentered the United States shortly thereafter.

In 2016, the Legislature enacted section 1473.7, which became effective January 1, 2017. (Stats. 2016, ch. 739, §1; *People v. Perez* (2018) 19 Cal.App.5th 818, 820 (*Perez*).) Section 1473.7 allows noncitizens previously convicted of crimes to which they pleaded no contest or guilty and who are no longer imprisoned or otherwise legally restrained to challenge their convictions based on, among other things, their counsels' failure to properly inform them of "the actual or potential adverse immigration consequences" of their pleas. (§ 1473.7, subd. (a)(1).) Section 1473.7 further provides that such a motion "shall" be filed with "reasonable diligence" after the later of the date the noncitizen receives a court or government notice asserting the conviction as a basis

2

for removal or the date a removal order based on the conviction becomes final.
(§ 1473.7, subd. (b)(1), (2).) [2]

In May 2017, a little more than five months after section 1473.7 went into effect, Morales filed his motion. In a sworn declaration, he asserted that his conviction was his

_____

[2] Section 1473.7 states in its entirety:

(a) A person no longer imprisoned or restrained may prosecute a motion to vacate a conviction or sentence for either of the following reasons:

(1) The conviction or sentence is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.

(2) Newly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law or in the interests of justice.

(b) A motion pursuant to paragraph (1) of subdivision (a) shall be filed with reasonable diligence after the later of the following:

(1) The date the moving party receives a notice to appear in immigration court or other notice from immigration authorities that asserts the conviction or sentence as a basis for removal.

(2) The date a removal order against the moving party, based on the existence of the conviction or sentence, becomes final.

(c) A motion pursuant to paragraph (2) of subdivision (a) shall be filed without undue delay from the date the moving party discovered, or could have discovered with the exercise of due diligence, the evidence that provides a basis for relief under this section.

(d) All motions shall be entitled to a hearing. At the request of the moving party, the court may hold the hearing without the personal presence of the moving party if counsel for the moving party is present and the court finds good cause as to why the moving party cannot be present.

(e) When ruling on the motion:

(1) The court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a).

(2) In granting or denying the motion, the court shall specify the basis for its conclusion.

(3) If the court grants the motion to vacate a conviction or sentence obtained through a plea of guilty or nolo contendere, the court shall allow the moving party to withdraw the plea.

(f) An order granting or denying the motion is appealable under subdivision (b) of Section 1237 as an order after judgment affecting the substantial rights of a party.

3

only criminal case, and that at the time he filed his motion he was 34 years old, married, a father and the sole financial supporter of his family.

Morales did not file his motion in the face of any removal proceeding. Rather, he filed it as part of his effort to obtain legal status in the United States. He stated in a declaration that he had been a victim of a store robbery in East Palo Alto in 2009, and that he had assisted law enforcement's investigation of that crime. He contended that his assistance made him eligible to receive a "U visa," a temporary nonimmigrant visa created by Congress to provide legal status for noncitizens who assist in the investigation of serious crimes in which they have been victimized. (See 8 U.S.C. § 1101(a)(15)(U); *Fonseca-Sanchez v. Gonzales* (7th Cir. 2007) 484 F.3d 439, 442, fn. 4.) Morales further declared he had submitted a U visa application, that this application was pending, and that it included a written certification from a law enforcement official that he had cooperated in the investigation of the store robbery. In this certification, a copy of which Morales attached to his declaration, a law enforcement official identified Morales as the victim of armed robbery, false imprisonment and felonious assault, or attempts to commit these crimes, and stated that Morales had cooperated in the investigation and prosecution of the perpetrators.

Morales also declared he had recently been counseled that his 2002 conviction barred him from "ever" having his U visa application granted. He contended that a U visa would not be granted to a noncitizen who was "inadmissible" under federal immigration law for his drug offense, citing section 214.1(a)(3)(I) of volume 8 of the Code of Federal Regulations, and section 1182, subdivision (a)(2)(A)(i)(II) of volume 8 of the United States Code. He also declared that in 2002 neither his attorney nor the court told him his conviction would cause him to be deported or bar him from ever coming into the United States again, and that he would not have entered his no contest plea if he had known his conviction would cause his deportation. He further contended he had properly brought his motion under section 1473.7 even though he was not a subject of removal proceedings.

4

The district attorney opposed Morales's motion on multiple grounds. These included that the motion was not proper under the terms of section 1473.7 in the absence of any removal proceedings against Morales.

At an August 2017 court hearing on Morales's motion, Morales presented three witnesses. First, Savas Loikedis testified that he defended Morales in the 2002 case. Loikedis did not recall Morales. Referring to a plea form executed by Morales in 2002, Loikedis said that normally, "when I advise a client and I go over the form with them—and . . . [deportation] would be something I would advise them; that [deportation] would be a consequence, that they would have immigration problems. [¶] As to whether I specifically told him he would be deported and never allowed to return, I can't sit here and say that I told him that." He would not have personally read and explained to Morales the form because Loikedis did not speak Spanish, but would have had an interpreter read them to Morales.

Nadeem Makada, an immigration attorney, testified as an expert on the effect a drug-related conviction would have on a noncitizen's immigration status and what "reasonably competent specific affirmative advice would have been at the time of [the] plea." Makada said a drug trafficking offense was an aggravated felony known in the legal community as a "kiss of death." It permanently barred a noncitizen from reentering the United States and from obtaining any form of legal residency here.

Next, Morales testified. He said he was a Mexican native who entered the United States when he was 17 years old, three years before he committed the 2002 offense. In 2002, he knew there was a likelihood he would be subject to deportation. His counsel, Loikedis, informed him of this likelihood, but did not advise him his no contest plea would certainly result in immediate deportation and permanently bar him from legal residency. Subsequently, he consulted with an attorney who advised him that his prior conviction would likely prevent him from obtaining a U visa and recommended he make an effort to "do something" about that conviction.

In closing argument, Morales's counsel argued the motion was meritorious and properly filed under section 1473.7. Counsel argued subdivision (b)'s requirement that a

5

party file a motion with "reasonable diligence" when faced with either a notice of removal proceedings or the filing of a final removal order, whichever came later, simply indicated that these two events "triggered" a reasonable diligence requirement. However, the subdivision did not bar the filing of a motion under section 1473.7 in the face of actual or potential adverse immigration consequences other than removal proceedings.

The district attorney asserted that "by its plain language, [section 1473.7] contemplates one of these two things happening: a notice to appear in immigration court or a deportation—or removal order becoming final." She argued these were "preconditions," the purpose of which was to "really nail down the prejudice requirement, because if we have an individual who is not facing actual removal proceedings, then there simply is no prejudice." She also argued the court should deny Morales's motion on its merits.

The court denied Morales's motion without prejudice because the motion was not "triggered" by a removal proceeding, which the court held is required by section 1473.7, subdivision (b). The court stated: "[T]he plain meaning of (b) is that the immigration proceedings that are detailed in paragraphs 1 and 2 trigger the ability to file this application for relief. Admittedly, (b) is not a model of clarity . . . . [¶] But at this point, in the absence of clarification from the Court of Appeal or the California Supreme Court, it seems to me a commonsensical ruling by this Court is that the motion shall be filed within reasonable diligence after the latter of the following specified in (1) and (2)." The court did not address the merits of Morales's motion. Morales filed a timely appeal from the court's order denying his motion.

## DISCUSSION

Morales contends the superior court should not have denied his motion, arguing the court's construction of section 1473.7, as limited to the circumstances in which removal proceedings have been initiated or completed, is wrong. The Attorney General agrees. We conclude the parties are correct. Section 1473.7 authorizes Morales's

6

motion, as indicated by its plain terms and its legislative history.[3] The superior court's construction is incorrect and leads to an absurd result.

We review statutory interpretation issues de novo. (*In re R.T.* (2017) 3 Cal.5th 622, 627.) Our interpretation of a statute begins, but is not necessarily limited, to its words. (*Ibid.*) "Statutory interpretation is a question of law [citation] in which we ascertain the Legislature's intent ' "with a view to effectuating the purpose of the statute, and construe the words of the statute in the context of the statutory framework as a whole" ' " (*Del Cerro Mobile Estates v. City of Placentia* (2011) 197 Cal.App.4th 173, 183.) "We give the words of the statute 'a plain and commonsense meaning' unless the statute specifically defines the words to give them a special meaning." (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1083 (*MacIsaac*).)

" ' If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls.' " (*J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 654.) Nonetheless, "[w]e may also look to a number of extrinsic aids, including the statute's legislative history, to assist us in our interpretation." (*MacIsaac*, *supra*, 134 Cal.App.4th at p. 1083, fn. omitted.) Courts seek to ascertain the intent of the Legislature for a reason—'to effectuate the purpose of the law.' " (*Id.* at p. 1084, italics omitted.) In the end, we should avoid interpreting a statute

---

[3] This issue has not been addressed by any court during the brief period since section 1473.7 took effect. In *Perez*, *supra*, 19 Cal.App.5th 818, the court considered not whether Perez had the right to file a section 1473.7 motion in the absence of removal proceedings, but whether Perez had filed his motion in a timely fashion. In doing so, the court construed section 1473.7 as calling for the motion to be filed with reasonable diligence after the initiation of a government removal proceeding. (*Perez*, at p. 829.) The court stated that Perez was deported in 2006, thereby indicating he was the subject of a removal proceeding. (*Id.* at pp. 820, 829.) It held that his motion was not untimely because, although he did not file it until 2017, he filed shortly after section 1473.7 became effective. (*Perez*, at p. 829.) The court had no reason to, and did not, address whether a noncitizen residing in the United States may file a motion under section 1473.7 based on a claimed adverse immigration consequence other than a removal proceeding.

in a manner which would both frustrate its purpose and lead to absurd results. (*People v. Broussard* (1993) 5 Cal.4th 1067, 1071.)

With these principles in mind, we turn first to the relevant terms of section 1473.7. Subdivision (a)(1) states: "A person no longer imprisoned or restrained may prosecute a motion to vacate a conviction or sentence" because "[t]he conviction or sentence is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." Subdivision (b) states: "A motion pursuant to paragraph (1) of subdivision (a) shall be filed with reasonable diligence after the later of the following: [¶] (1) The date the moving party receives a notice to appear in immigration court or other notice from immigration authorities that asserts the conviction or sentence as a basis for removal. [¶] (2) The date a removal order against the moving party, based on the existence of the conviction or sentence, becomes final."

The superior court's conclusion that Morales could not prosecute his motion in the absence of removal proceedings based on section 1473.7, subdivision (b) is contradicted by the plain language of section 1473.7, subdivision (a)(1). It authorizes a noncitizen to pursue a motion to vacate a conviction due to an error that has compromised his or her ability to address "adverse immigration consequences," without limitation. Specifically, it authorizes a noncitizen no longer imprisoned or restrained to "prosecute"[4] such a motion because of prejudicial error that damaged his or her "ability to meaningfully understand, defend against, or knowingly accept *the actual or potential adverse immigration consequences*" of a no contest plea. (§ 1473.7, subd. (a)(1), italics added.) The phrase "actual or potential adverse immigration consequences" is broad and encompasses circumstances other than removal, such as, for example, the one Morales

---

[4] As this court has previously held based on Black's Law Dictionary, " '[t]o *"prosecute" an action is not merely to commence it, but includes following it to an ultimate conclusion.*' " (*Randle v. City and County of San Francisco* (1986) 186 Cal.App.3d 449, 456, fn. 8.)

has asserted: his claimed inability to obtain temporary legal status in the United States via a U visa, for which he purportedly would qualify if not for his conviction.

Also, the structure and wording of section 1473.7 indicates subdivisions (a)(1) and (b) serve different purposes. The former authorizes motions by a noncitizen in the face of adverse immigration consequences; the latter addresses the timeliness and due diligence of such motions brought in the face of removal proceedings specifically. Subdivision (a)(1) broadly authorizes a noncitizen to prosecute a motion when faced with "actual or potential adverse immigration consequences" where error has prejudiced his or her ability to understand or defend against them. Section 1473.7, subdivision (b), on the other hand, addresses only one such consequence, namely removal proceedings, and requires that a motion to vacate "shall be filed with reasonable diligence" after the "later" of notice of the initiation of removal proceedings or the filing of a final removal order. It imposes an outside deadline, albeit not a precise one, before which a motion must be filed if removal proceedings have been initiated.

Further, interpreting subdivision (b) to prevent noncitizens from seeking relief until and unless they are subject to removal proceedings would turn a provision about timeliness and due diligence into one that guarantees delay and renders section 1473.7 ineffectual in many cases. A noncitizen would be prevented from filing a motion until the latest possible moment, e.g., after a removal order has become final. We can think of no rational reason why the Legislature would prevent a noncitizen facing removal from filing a motion that might be dispositive of the matter until the completion of all removal proceedings, when authorities could very well remove the noncitizen before a court is able to consider his or her motion.[5] In other words, construing subdivision (b) as prohibiting the filing of all such motions to vacate until the occurrence of the last of the removal events listed, as did the superior court, creates a potentially fatal obstacle to a

---

[5] A noncitizen may only gain relief from a final removal order if the noncitizen successfully applies for an administrative stay (8 C.F.R. § 241.6) or successfully petitions for a federal court order staying removal (8 U.S.C. § 1252(b)(2)).

9

noncitizen's exercise of a right created by section 1473.7. This is an absurd result. By contrast, the statute's purpose of authorizing noncitizens to challenge improper convictions in the face of a broad range of adverse immigration consequences is preserved by interpreting subdivision (b) to authorize a noncitizen to file a motion as late as the last of the removal efforts listed in subdivision (b), provided that the noncitizen does so with "reasonable diligence."[6]

In short, the plain terms of subdivision (a)(1) grant noncitizens the authority to prosecute a wide range of immigration-related motions, while the plain terms of subdivision (b) define what motions are timely filed in the face of removal proceedings specifically. Section 1473.7 gives Morales the authority to prosecute his motion.

The legislative history of section 1473.7 also supports this construction.[7] Assembly Bill No. 813 (AB 813) was passed by the Assembly and Senate in their 2015–2016 regular session and codified as section 1473.7. The legislative history indicates that AB 813 was intended, among other things, to create a statutory right for noncitizens no

---

[6] We do not mean to suggest that a court cannot require due diligence in other circumstances. (See, e.g., *People v. Castaneda* (1995) 37 Cal.App.4th 1612 [postjudgment motion brought under section 1016.5 to change a plea must be made with "reasonable diligence"], cited in *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 203–204 (*Zamudio*).) However, that issue is not before us and we do not discuss it further.

[7] The parties each cite to portions of AB 813's legislative history in their briefs, but neither has submitted any legislative history materials to this court. We treat their references as requests that we take judicial notice of AB 813's legislative history, and we grant this request regarding legislative history materials presently available from the official government website on legislative information for the 2015–2016 legislative session, http://www.leginfo.ca.gov. (Evid. Code, §§ 459, 452.) These materials discuss official legislative acts (*id.*, § 452, subd. (c); *In re S.B.* (2004) 32 Cal.4th 1287, 1296, fn. 3 [taking judicial notice of legislative history under Evid. Code, § 452, subd. (c)]), and reflect procedural facts that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy. (Evid. Code, § 452, subd. (h); see, e.g., *Seifert v. Winter* (D.D.C. 2008) 555 F.Supp.2d 3, 11, fn. 5; *People v. Mitchell* (2010) 403 Ill.App.3d 707, 709 [both stating courts may take judicial notice of information published on official government websites].)

longer imprisoned or legally restrained to address unforeseen adverse immigration consequences resulting from their conviction upon their entry of a no contest or guilty plea, and indicate these consequences are not limited to removal proceedings. According to the Legislative Counsel's Digest, AB 813 addressed a gap in existing law, under which persons no longer in custody or otherwise legally restrained generally could not seek a writ of habeas corpus to address immigration problems stemming from ineffective assistance of counsel. (Legis. Counsel's Dig., AB 813, Stats. 2016, ch. 739 (2015–2016 Reg. Sess.).)[8] Using the broad language of what became subdivision (a) of section 1473.7, the Digest stated that AB 813 was intended to "create an explicit right for a person no longer imprisoned or restrained to prosecute a motion to vacate a conviction or sentence based on a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere . . . ." (*Ibid.*)[9]

Further, from the time AB 813 was introduced in the Assembly Committee on Public Safety to its passage by both legislative chambers, legislative reports summarized the bill using broad language that indicates the "adverse immigration consequences" a moving party could raise were not limited to removal proceedings. These summaries stated repeatedly, using identical language, that AB 813 created "a mechanism of post-conviction relief for a person to vacate a conviction or sentence based on error damaging

---

[8] The initiating legislative committee for AB 813, the Assembly Committee on Public Safety, discussed at some length the limitations on coram nobis and habeas corpus mentioned in *People v. Kim* (2009) 45 Cal.4th 1078 and *People v. Villa* (2009) 45 Cal.4th 1063. (Assem. Com. on Public Safety Report on AB 813 (2015–2016 Reg. Sess.) for April 21, 2015 hearing, pp. 3–4.) Of particular concern was the holding in *Padilla v. Kentucky* (2010) 559 U.S. 356 that defense counsel must provide affirmative and competent advice to noncitizen defendants regarding the potential immigration consequences of their criminal cases. (Assem. Com. on Public Safety Report on AB 813 (2015–2016 Reg. Sess.) for April 21, 2015 hearing, pp. 5–6.)

[9] Section 1473.7 also authorizes a person no longer imprisoned or restrained to prosecute a motion to vacate a conviction or sentence based on newly discovered evidence of actual innocence. (§ 1473.7, subd. (a)(2).) This provision is not raised in this case.

his or her ability to meaningfully understand, defend against, or knowingly accept *the immigration consequences* of the conviction." (Assem. Com. on Public Safety Report on AB 813 (2015–2016 Reg. Sess.) for April 21, 2015 hearing, p. 1; Assem. Com. on Public Safety, 3rd reading analysis of AB 813 (2015–2016 Reg. Sess.), April 24, 2015, p. 1; Assem. Com. on Public Safety, 3rd reading analysis of AB 813 (2015–2016 Reg. Sess.), May 7, 2015, p. 1; Assem. Com. on Public Safety, 3rd reading analysis of AB 813 (2015–2016 Reg. Sess.), May 15, 2015, p. 1; Sen. Com. on Public Safety Bill Analysis of AB 813 (2015–2016 Reg. Sess.), July 6, 2015, p. 2; Sen. Com. on Public Safety Bill Analysis of AB 813 (2015–2016 Reg. Sess.), May 9, 2016, p. 2; Sen. Rules Com., 3rd reading analysis of AB 813 (2015–2016 Reg. Sess.), August 15, 2016, p. 1; Concurrence in Senate Amendments of AB 813, August 24, 2016, p. 1; Concurrence in Senate Amendments of AB 813 (2015–2016 Reg. Sess.), August 30, 2016, pp. 1–2; italics added.)

The legislative history also repeatedly indicates legislators were concerned about convictions that rendered noncitizens removable *or* inadmissible.  Both Assembly and Senate committee discussions of AB 813,[10] after referring to categories of crimes that render a noncitizen removable from the United States, refer to "categories of crimes which will render a non-citizen *inadmissible* to the United States, including: . . . drug convictions." (Assem. Com. on Public Safety Report on AB 813 (2015–2016 Reg. Sess.) for April 21, 2015 hearing, p. 3; Sen. Com. on Public Safety Bill Analysis of AB 813 (2015–2016 Reg. Sess.), July 6, 2015, p. 3; Sen. Com. on Public Safety Bill Analysis of AB 813 (2015–2016 Reg. Sess.), May 9, 2016, p. 3; Sen. Rules Com., 3rd reading analysis of AB 813 (2015–2016 Reg. Sess.), August 15, 2016, p. 2; italics added.)

---

[10] It is " 'well established that reports of legislative committees . . . are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain. . . .  The rationale for considering committee reports . . . is similar to the rationale for considering voter materials when construing an initiative measure.  In both cases it is reasonable to infer that those who actually voted on the proposed measure read and considered the materials presented in explanation of it, and that the materials therefore provide some indication of how the measure was understood at the time by those who voted to enact it.' " (*People v. Cruz* (1996) 13 Cal.4th 764, 773, fn. 5.)

AB 813's legislative history also indicates the Legislature intended AB 813 would be a part of a larger statutory scheme that addresses adverse immigration consequences including, but not limited to, removal proceedings. Specifically, several committee reports include references to another, already existing statute, section 1016.5. (Sen. Com. on Public Safety, Rep. for July 7, 2015 hearing, p. 8; Sen. Com. on Public Safety Bill Analysis of AB 813 (2015–2016 Reg. Sess.), July 6, 2015, p. 2; Sen. Com. on Public Safety Bill Analysis of AB 813 (2015–2016 Reg. Sess.), May 9, 2016, p. 2.) Section 1016.5 requires that a trial court, before it accepts a defendant's guilty or no contest plea to a felony offense, advise the defendant that "the offense for which you have been charged may have the consequences of deportation, *exclusion from admission* to the United States, or *denial of naturalization* pursuant to the laws of the United States." (§ 1016.5, subd. (a), italics added.) As a Senate committee report regarding AB 813 correctly states, when the court does not give this admonishment, section 1016.5 also authorizes the vacating of the resulting conviction for persons who are no longer imprisoned or legally restrained: "A criminal defendant who is no longer in 'custody' for purposes of the writ of habeas corpus, can move to withdraw a guilty plea if the trial court accepting the plea, failed to admonish the defendant of the possible immigration consequence of the plea under Penal Code section 1016.5." (Sen. Com. on Public Safety Bill Analysis of AB 813 (2015–2016 Reg. Sess.), July 6, 2015, pp. 8–9, citing *Zamudio*, *supra*, 23 Cal.4th 183 and *People v. Martinez* (2013) 57 Cal.4th 555, 565.) The committee's coupling of AB 813 with section 1016.5, its focus on "immigration consequences" in general, and its failure to indicate that AB 813 was limited to removal proceedings further supports the conclusion that the Legislature intended AB 813 to apply to a broad scope of immigration consequences similar to those expressly called out in section 1016.5, i.e., immigration consequences that in addition to removal, such as exclusion from admission and denial of naturalization.

In short, based on our review of the language of section 1473.7 and its legislative history, we conclude that the superior court erred as a matter of law in concluding that Morales did not have the right to file his motion under section 1473.7 unless he faced

13

removal proceedings. Section 1473.7 authorizes defendants such as Morales to file motions under section 1473.7 in the face of actual and potential immigration consequences including, but not limited to, removal efforts. Therefore, the court should have considered the merits of his motion.[11]

## DISPOSITION

The order appealed from is reversed, and this matter is remanded to the superior court for further proceedings consistent with this opinion.

---

[11] Morales also argues that his motion was proper because, accepting the superior court's construction of section 1473.7, he was subject to removal proceedings after he served his sentence for his 2002 conviction. We reject this argument because there is no evidence to support it, as the record indicates Morales voluntarily departed from the United States. Also, Morales did not raise it below, instead conceding in his motion papers that he had "never been subject to removal proceedings."

 

_____

STEWART, J.

We concur.

_____

KLINE, P.J.

_____

MILLER, J.

*People v. Morales* (A152530)

Trial Court:   San Mateo County Superior Court

Trial Judge:   Hon. John W. Runde

Counsel:

Stanley Dale Radtke, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Donna M. Provenzano, Supervising Deputy Attorney General, Christina vom Saal, Deputy Attorney General, for Plaintiff and Respondent.