Filed 8/12/22

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C090171 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F7257) |
| v. | |
| ANDREW LAWRENCE GREGOR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Shasta County, Daniel E. Flynn, Judge.  Affirmed.

Meredith Lee Fahn, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein, Stephanie A. Mitchell, Deputy Attorney General, for Plaintiff and Respondent.

1

Defendant Andrew Lawrence Gregor, a naturalized citizen from Australia, pleaded guilty to a felony sex offense that was later reduced to a misdemeanor and dismissed after early termination of probation. After he was informed he was not able to sponsor his father for a family visa due to this conviction, defendant filed the instant motion pursuant to Penal Code section 1473.7 and sought to withdraw his plea claiming he was unable to meaningfully understand, defend against, or knowingly accept the adverse immigration consequences of his conviction.[1] The trial court denied the motion; defendant appealed.

We affirm the order denying the motion to withdraw the plea.

### FACTUAL AND PROCEDURAL BACKGROUND

In April 2011, pursuant to a plea agreement, defendant pleaded guilty to felony contacting a minor with the intent to commit a sexual offense (§ 288.4, subd. (b); count 2), and no contest to misdemeanor contact with a minor with the intent to commit a sex offense (§ 288.4, subd. (a)(1); count 3). Sentencing was delayed for one year. If defendant successfully completed a sexual integrity program, count 2 was to be dismissed. In the "Felony Change of Plea; Waiver of Rights; Advisement of Consequences; Findings and Order" form, defendant initialed the box stating, "If I am not a citizen of the United States, my plea could result in my being deported from, or excluded from admission to the United States, or denied citizenship." When he entered his plea, defendant acknowledged reading, understanding, and giving up each right listed on the form.

---

[1] Further undesignated statutory references are to the Penal Code.

On September 27, 2012, the trial court dismissed count 2 and placed defendant on informal probation for three years on count 3. Since the time of sentencing, this case has undergone a series of procedural maneuvers we do not recount here, as only the final motion is the subject of this appeal.

In August 2016, defendant received a letter from the United States Citizenship and Immigration Services (USCIS) advising him that the USCIS intended to deny his petition for a family-based visa for his wife. The USCIS identified a federal law prohibiting United States citizens and lawful permanent residents who have been convicted of specified offenses against a minor from filing a family-based visa petition.

On March 15, 2018, defendant filed a motion pursuant to section 1473.7. We will discuss the relevant statutory provisions in detail *post*, but it suffices to say here that this section allows a "person who is no longer in criminal custody" to file a motion to vacate a conviction or sentence where the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a)(1).)

Although defendant originally alleged only that he had not been advised of the requirement to register as a sex offender for life, after briefing and oral argument he added the contention that he was unable to understand that his plea would result in the inability to sponsor his father for citizenship. He also filed a copy of the letter from the USCIS regarding the rejection of his application for a family-based visa for his wife. While the motion was pending, the Legislature proposed amendments to section 1473.7.[2] The trial court denied defendant's motion without prejudice to refiling if the amendments passed.

---

[2] We discuss these amendments in greater detail, *post*.

The Legislature subsequently passed the bill, and defendant renewed his argument that he was unable to meaningfully and knowingly accept the adverse immigration consequences of his plea because he was not informed he would be unable to petition for a family-based visa to sponsor his wife or his father. The trial court again denied the motion. The court found defendant personally stood in no worse position in terms of immigration consequences at the time of the motion than he did before he pleaded guilty. Further, the court concluded the right to sponsor a person to become a citizen was not an "application for an immigration benefit" as set forth in the statute. Finally, the court found defendant's inability to sponsor his father was a collateral consequence and, at best, a minor one, as the father could seek another sponsor.

Defendant timely appealed the order. After multiple extensions of time for briefing and various additions to the record, the case was fully briefed on November 14, 2021, and assigned to this panel on December 14, 2021. The case was argued and submitted on July 20, 2022. At oral argument, appellate counsel for defendant requested for the first time that her client's name be redacted from this opinion; this court allowed counsel to make that request in a written motion and permitted the Attorney General's representative to respond thereto.

## DISCUSSION

### I

*Redaction*

We first explain why we deny defendant's request to refer to him by his initials in this opinion. Defendant bases his argument on California Rules of Court, rule 8.90(b)(10) and (11).[3] Rule 8.90(b)(10) is a "catch-all" provision that allows the court to use first name or initials "in other circumstances in which personal privacy interests

---

[3] Undesignated references to rules are to the California Rules of Court.

support not using the person's name." Rule 8.90(b)(11) provides for the use of initials of "[p]ersons in other circumstances in which use of that person's full name would defeat the objective of anonymity for a person identified in (1)-(10)."

We are aware of no authority applying rule 8.90(b)(10) and (11) to criminal defendants except in the narrow circumstance--not applicable here--in which the sole purpose of the appeal is to attempt to vindicate a statutory privacy right. (See, e.g., *People v. D.C.* (2020) 54 Cal.App.5th 727, 730, fn. 1; *People v. E.B.* (2020) 51 Cal.App.5th 47, 52, fn. 1.) Additionally, while defendant argues that he may eventually be able to request that the trial court seal his criminal records in the event that he is successfully able to vacate his plea and his case is referred to and resolved in veteran's court (see § 1170.9, subd. (h)(4)(D)), that argument is entirely speculative.

Although we appreciate defendant's situation and corresponding request, his position in this appeal is that of a criminal defendant seeking relief from the denial of his motion to withdraw a guilty plea. We therefore deny his request for redaction.

II

*Section 1473.7*

Defendant argues his ability to sponsor his father for a family-based visa is an immigration benefit under federal law, and because he has demonstrated this immigration benefit is impaired by his guilty plea, section 1473.7 required the court to grant his motion to set aside his plea. In so arguing, defendant asserts that the denial of an immigration benefit *necessarily* constitutes an adverse immigration consequence under section 1473.7, subdivision (a)(1). However, as we will explain, even assuming for the sake of argument that the right to sponsorship is an immigration benefit under federal law, we conclude that right's impairment is not an adverse immigration consequence such that defendant may set aside his conviction under section 1473.7, subdivision (a)(1). Thus, the trial court properly denied defendant's motion.

5

A.  *Standard of Review*

This is a question of statutory interpretation, which we review de novo.  (*People v. Medina* (2018) 24 Cal.App.5th 61, 66.)  "Under fundamental rules of statutory construction, we must ascertain the intent of the Legislature, or the electorate, from examining the statute as a whole in order to effectuate the purpose of the law."  (*People v. Saelee* (2018) 28 Cal.App.5th 744, 752.)  "Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning and construing them in context.  [Citation.]  If the plain language of the statute is clear and unambiguous, our inquiry ends, and we need not embark on judicial construction."  (*People v. Johnson* (2002) 28 Cal.4th 240, 244.)

"Nevertheless, the 'plain meaning' rule does not prevent a court from determining whether the literal meaning of the statute comports with its purpose.  [Citations.]  Thus, although the words used by the Legislature are the most useful guide to its intent, we do not view the language of the statute in isolation.  [Citation.]  Rather, we construe the words of the statute in context, keeping in mind the statutory purpose.  [Citation.]  We will not follow the plain meaning of the statute 'when to do so would "frustrate[] the manifest purposes of the legislation as a whole or [lead] to absurd results." '  [Citations.]  Instead, we will ' "interpret legislation reasonably and . . . attempt to give effect to the apparent purpose of the statute." ' "  (*MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1083.)  Thus, to determine the most reasonable interpretation of a statute, we look to its legislative history and background.  (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332; *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1129-1130.)  " 'We must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." ' "  (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1007.)

B. *Development of Section 1473.7*

The Legislature added section 1473.7 in 2016, effective January 1, 2017. (Stats. 2016, ch. 739, § 1.) As originally enacted, section 1473.7, subdivision (a)(1) provided in relevant part that "[a] person no longer imprisoned or restrained may prosecute a motion to vacate a conviction or sentence" where "[t]he conviction or sentence is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, former subd. (a)(1), Stats. 2016, ch. 739, § 1, eff. Jan. 1, 2017.)

Subdivision (b) addressed the timeliness of a motion made pursuant to subdivision (a)(1), requiring that it be brought with reasonable diligence after the later of (1) "[t]he date the moving party receives a notice to appear in immigration court or other notice from immigration authorities that asserts the conviction or sentence as a basis for removal"; and (2) "[t]he date a removal order against the moving party, based on the existence of the conviction or sentence, becomes final." (§ 1473.7, former subd. (b)(1)-(2), Stats. 2016, ch. 739, § 1, eff. Jan. 1, 2017.)

Subdivision (e)(1) provided that when ruling on the motion, "[t]he court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a)." (§ 1473.7, former subd. (e), Stats. 2016, ch. 739, § 1, eff. Jan. 1, 2017.)

Effective January 1, 2019, the Legislature amended section 1473.7. (Stats. 2018, ch. 825, § 2 (2019 amendments).) Amended subdivision (b) provided that the moving party's motion shall be "deemed timely filed at any time in which the individual filing the motion is no longer in criminal custody." (§ 1473.7, subd. (b)(1).) However, a motion filed pursuant to subdivision (a)(1) "may be deemed untimely filed if it was not filed with reasonable diligence after the later of the following: [¶] (A) The moving party receives a notice to appear in immigration court or other notice from immigration authorities that

7

asserts the conviction or sentence as a basis for removal or the denial of an application for an immigration benefit, lawful status, or naturalization.  [¶]  (B)  Notice that a final removal order has been issued against the moving party, based on the existence of the conviction or sentence that the moving party seeks to vacate." (§ 1473.7, subd. (b)(2)(A)-(B).)

The Legislature also added a second sentence to section 1473.7, subdivision (e)(1). The second sentence, from which defendant's argument arises, states:  "For a motion made pursuant to paragraph (1) of subdivision (a), the moving party shall also establish that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization." (*Ibid.*)

Finally, section 1473.7, subdivision (e)(4) was added and provides in relevant part: "When ruling on a motion under paragraph (1) of subdivision (a), the only finding that the court is required to make is whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence."[4]  (As amended by Stats. 2021, ch. 420, § 1.)

---

[4]  The Legislature also clarified that relief pursuant to section 1473.7, subdivision (a)(1) did not require a showing of ineffective assistance of counsel (Stats. 2018, ch. 825, § 2), which courts had previously concluded was the applicable standard for motions brought under section 1473.7.  (See, e.g., *People v. Olvera* (2018) 24 Cal.App.5th 1112, 1116 [to establish prejudicial error, must show ineffective assistance of counsel].)  Section 1473.7, subdivision (a) also allows a person no longer in criminal custody to file a motion to vacate a conviction or sentence where newly discovered evidence of actual innocence requires vacation of the conviction or sentence as a matter of law or in the interests of justice, or where "[a] conviction or sentence was sought, obtained, or imposed on the basis of race, ethnicity, or national origin."  These provisions are not at issue here.

C. *Denial of an Immigration Benefit*

As stated *ante*, defendant's argument is based on the second sentence of section 1473.7, subdivision (e)(1). He contends his ability to sponsor his father for a family-based visa is an immigration benefit under federal law and that the denial of this benefit necessarily constitutes an "actual or potential adverse immigration consequence[]" such that he has satisfied the requirements for relief as outlined by subdivisions (a)(1), (e)(1), (4). However, as we next explain, we conclude a moving party's burden to demonstrate that "the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization" relates to that party's burden to demonstrate the timeliness of the motion, rather than the substantive merits.

Prior to the 2019 amendments to section 1473.7, the statute did not require the trial court to make a finding as to the timeliness of the motion. In an opinion published prior to the 2019 amendments, the appellate court in *People v. Morales* (2018) 25 Cal.App.5th 502, at page 511 (*Morales*) concluded that section 1473.7, subdivision (b) only applied to "what motions are timely filed in the face of removal proceedings specifically." Accordingly, related to these and other issues, the 2019 amendments were intended "to clarify the timing and procedural requirements of motions for post-conviction relief that are based on a legal error regarding a defendant's comprehension of immigration consequences stemming from his or her conviction." (Sen. Com. on Public Safety, Rep. on Assem. Bill No. 2867 (2017-2018 Reg. Sess.) June 11, 2018, p. 1.)[5] Accordingly, the

---

[5] It is " 'well established that reports of legislative committees . . . are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain. . . . The rationale for considering committee reports . . . is similar to the rationale for considering voter materials when construing an initiative measure. In both cases it is reasonable to infer that those who actually voted on the proposed measure read and considered the materials presented in explanation of it, and that the materials therefore

9

Legislature amended section 1473.7, subdivision (b) and added the second sentence of subdivision (e)(1), as we set forth *ante*.

In *People v. Perez* (2021) 67 Cal.App.5th 1008, at page 1016, the appellate court discussed the timeliness of a section 1473.7 motion following the 2019 amendments: "First, if 'the individual filing the motion is no longer in criminal custody' and the triggering events specified in subparagraphs (A) and (B) of subdivision (b)(2) of section 1473.7 have not yet occurred, the motion must be deemed timely under the mandatory rule in subdivision (b)(1) of section 1473.7. [Citation.] [¶] Second, if the triggering events have occurred, the superior court must determine whether the motion was 'filed with reasonable diligence after the later of' the triggering events. [Citation.] [¶] Third, if the superior court determines the moving party acted with reasonable diligence after the later of the triggering events, the motion must be deemed timely under the mandatory rule in subdivision (b)(1) of section 1473.7. In other words, the discretionary exception to deem the motion untimely does not apply. [¶] Fourth, if the superior court determines the moving party did not act with reasonable diligence after the later of the triggering events, the court must exercise its discretionary authority and decide whether to deem the motion untimely. To properly exercise the discretionary authority granted by subdivision (b)(2) of section 1473.7, the court must consider the totality of the circumstances." In other words, " 'reasonable diligence' " is not a timeliness requirement for motions made pursuant to section 1473.7, subdivision (a), "but rather a *condition* that, if present, requires the court to grant meritorious motions. Conversely, if the condition is lacking, the court is then empowered to exercise its discretion to either consider the merits or deny the motion on timeliness grounds." (*People v. Alatorre* (2021) 70 Cal.App.5th 747, 757.)

---

provide some indication of how the measure was understood at the time by those who voted to enact it.' " (*People v. Cruz* (1996) 13 Cal.4th 764, 773, fn. 5.)

Thus, "the Legislature created a strikingly generous timeliness standard for immigration-related petitions." (*Id*. at p. 759.)

The 2019 amendments included a revision of section 1473.7, subdivision (b) to provide that a motion brought pursuant to subdivision (a)(1) may be deemed untimely if not filed with reasonable diligence after receipt of notice from immigration authorities that "asserts the conviction or sentence as a basis for removal or the denial of an application for an immigration benefit, lawful status, or naturalization." (*Id*., subd. (b)(2)(A).) This revision addressed the conclusion in *Morales*, *supra*, 25 Cal.App.5th at page 511 that subdivision (b) related only to motions involving removal. The Legislature's amendment to section 1473.7, subdivision (e)(1) requires the moving party to "establish that the conviction or sentence being challenged is currently causing or has the potential to cause *removal or the denial of an application for an immigration benefit, lawful status, or naturalization*" (italics added)--verbiage identical to the timeliness provision contained in subdivision (b)(2)(A), and adding a requirement that the moving party must now make a showing regarding the timeliness of the motion.

The 2019 amendments' addition of subdivision (e)(4) to section 1473.7 supports the interpretation that the second sentence of subdivision (e)(1) is intended to reference a timeliness showing rather than a substantive showing. Section 1473.7, subdivision (e)(4) specifies that "[w]hen ruling on a motion under paragraph (1) of subdivision (a), the *only* finding that the court is required to make is whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (As amended by Stats. 2021, ch. 420, § 1, italics added.) Before that subdivision's addition to the statute in 2019, the moving party could prevail only on judicially created findings because the " 'grounds for the motions' " were not specified by the statute. (*People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1067.) By specifying the grounds of the motion in subdivision (e)(4), the

11

Legislature demonstrated that the moving party's showing of a denial of an immigration benefit is not a substantive showing, but rather a showing related to timeliness.

Finally, section 1473.7, subdivision (e)(1) expressly requires the moving party to make two separate showings: (1) by a preponderance of the evidence, the existence of grounds for relief specified in subdivision (a); *and* (2) the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization. Were the two sections of subdivision (e)(1) both related to the substantive merits of the motion, and entirely overlapping--such that the denial of an immigration benefit *necessarily* equals an adverse immigration consequence as the law defines such consequence, as defendant suggests--there would be no need for both showings.

Pursuant to the foregoing, we conclude that when the moving party brings a motion pursuant to section 1473.7, subdivision (a)(1), as stated in subdivision (e)(1) and (4) of that section, the only substantive finding required by the court is "whether the conviction is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence" (§ 1473.7, subd. (e)(4)), and the court is required to grant the motion where the party has established, by a preponderance of the evidence, the existence of the ground for relief specified in subdivision (a)(1). *Separately*, the moving party must establish "that the conviction or sentence being challenged is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit, lawful status, or naturalization" (*id.*, subd. (e)(1)), and the court must deem the motion timely filed except where specified by subdivision (b)(2).

Here, defendant's showing of the denial of the ability to sponsor his father for a family-based visa, which we will assume without deciding constitutes an immigration benefit, was related to the timeliness of his motion rather than the substantive merits of

12

the motion. He was still required to show by a preponderance of the evidence the grounds for relief specified in section 1473.7, subdivision (a)(1), namely, that he was not adequately informed of an adverse immigration consequence at the time of his plea.

Accordingly, we must next answer the question of whether the denial of the ability to sponsor a relative for a family-based visa constitutes an adverse immigration consequence under section 1473.7. As we will explain, we conclude it does not.

D. *Adverse Immigration Consequence*

The phrase "adverse immigration consequence" is not defined by section 1473.7. However, the development of protections for criminal defendants potentially facing immigration consequences as a result of their conviction or sentence sheds considerable light on the Legislature's intent by its use of the phrase in section 1473.7. We begin with a discussion of that development.

For many years, adverse immigration consequences of guilty pleas were considered indirect or collateral matters and, thus, trial courts were not required to advise defendants of them. (*People v. Mejia* (2019) 36 Cal.App.5th 859, 866-867.) In 1977, the Legislature began requiring trial courts to advise criminal defendants as follows: "If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (§ 1016.5, subd. (a).) Following the enactment of section 1016.5, however, defense counsel could still rely on the trial court's immigration advisement unless there was an inquiry by the defendant; an attorney's misrepresentation could constitute ineffective assistance of counsel in some cases. (*Mejia*, at p. 867.)

In 2010, the high court in *Padilla v. Kentucky* (2010) 559 U.S. 356 concluded defense attorneys have a duty to understand and accurately explain to their clients the risk that a guilty plea would result in deportation or removal. (*Id.* at pp. 367-368, 373-374 ["The severity of deportation--'the equivalent of banishment or exile,' [citation]--only

13

underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation"].) The court noted: "The landscape of federal immigration law has changed dramatically over the last 90 years. While once there was only a narrow class of deportable offenses . . . , immigration reforms over time have expanded the class of deportable offenses . . . . The 'drastic measure' of deportation or removal, [citation], is now virtually inevitable for a vast number of noncitizens convicted of crimes." (*Id*. at p. 360.) Accordingly, the court concluded that when "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for [the defendant's] conviction" (*id*. at p. 368), such that "the deportation consequence is truly clear . . . , the duty to give correct advice is equally clear" (*id*. at p. 369). Citing section 1016.5 among statutes from other states, the court observed that many states require trial courts to advise defendants of "possible immigration consequences." (*Padilla,* at p. 374, fn. 15.)

In 2013, our Supreme Court reiterated the gravity of immigration consequences flowing from/relating to/attendant to guilty pleas: "That a defendant might reject a plea bargain because it would result in deportation, exclusion from admission to the United States, or denial of naturalization is beyond dispute. The Legislature so recognized when it enacted section 1016.5. (See *id.*, subd. (d).) This court has found that 'criminal convictions may have "dire consequences" under federal immigration law [citation] and that such consequences are "material matters" [citation] for noncitizen defendants faced with pleading decisions.' [Citation.] '[A] deported alien who cannot return "loses his job, his friends, his home, and maybe even his children, who must choose between their [parent] and their native country . . . ." ' [Citation.] Indeed, a defendant 'may view immigration consequences as the only ones that could affect his calculations regarding the advisability of pleading guilty to criminal charges' [citation], such as when the defendant has family residing legally in the United States. 'Thus, even before the Legislature expressly recognized the unfairness inherent in holding noncitizens to pleas

14

they entered without knowing the consequent immigration risks (see § 1016.5, subd. (d), added by Stats. 1977, ch. 1088, § 1, p. 3495), we held that justice may require permitting one who pleads guilty "without knowledge of or reason to suspect [immigration] consequences" to withdraw the plea.' " (*People v. Martinez* (2013) 57 Cal.4th 555, 563.) The court additionally observed that the high court in *Padilla* similarly held that "relief for the ineffective assistance of counsel may be available to a defendant whose attorney failed to advise him or her of the immigration consequences of a plea." (*Ibid.*)

Effective January 1, 2016, the Legislature added sections 1016.2 and 1016.3 to the Penal Code. (Stats. 2015, ch. 705, §§ 1, 2.) Section 1016.2 codified *Padilla*. (§ 1016.2, subd. (h).) The Legislature recognized that *Padilla* "held that the Sixth Amendment requires defense counsel to provide affirmative and competent advice to noncitizen defendants regarding the potential immigration consequences of their criminal cases," and it observed that California courts had previously held that "defense counsel must investigate and advise regarding the immigration consequences of the available dispositions, and should, when consistent with the goals of and informed consent of the defendant, and as consistent with professional standards, defend against adverse immigration consequences," citing *People v. Soriano* (1987) 194 Cal.App.3d 1470 (defense counsel failed to adequately advise the defendant of deportation consequences of guilty plea), *People v. Barocio* (1989) 216 Cal.App.3d 99 (counsel failed to inform the defendant of his right to a recommendation against deportation at sentencing hearing), and *People v. Bautista* (2004) 115 Cal.App.4th 229 (defense counsel failed to advise the defendant that result of plea was mandatory deportation and exclusion). (§ 1016.2, subd. (a).)

The Legislature noted that *Padilla* "sanctioned the consideration of immigration consequences by both parties in the plea negotiating process. The court stated that 'informed consideration of possible deportation can only benefit both the State and noncitizen defendants during the plea-bargaining process. By bringing deportation

15

consequences into this process, the defense and prosecution may well be able to reach agreements that better satisfy the interests of both parties.' " (§ 1016.2, subd. (b).) The Legislature recognized *Padilla*'s observation that "for noncitizens, deportation is an integral part of the penalty imposed for criminal convictions" (*id.*, subd. (c)), and it observed that "[d]efendants who are misadvised or not advised at all of the immigration consequences of criminal charges often suffer irreparable damage to their current or potential lawful immigration status, resulting in penalties such as mandatory detention, deportation, and permanent separation from close family. In some cases, these consequences could have been avoided had counsel provided informed advice and attempted to defend against such consequences." (*Id.*, subd. (e).)

The Legislature further noted that "[o]nce in removal proceedings, a noncitizen may be transferred to any of over 200 immigration detention facilities across the country. Many criminal offenses trigger mandatory detention, so that the person may not request bond." (§ 1016.2, subd. (f).) Finally, the Legislature noted: "The immigration consequences of criminal convictions have a particularly strong impact in California. One out of every four persons living in the state is foreign-born. One out of every two children lives in a household headed by at least one foreign-born person. The majority of these children are United States citizens. It is estimated that 50,000 parents of California United States citizen children were deported in a little over two years. Once a person is deported, especially after a criminal conviction, it is extremely unlikely that he or she ever is permitted to return." (*Id.*, subd. (g).)

Section 1016.3 requires defense counsel to "provide accurate and affirmative advice about the immigration consequences of a proposed disposition," and, when consistent with the defendant's informed consent and with professional standards, "defend against those consequences" (*id.*, subd. (a)). Subdivision (c) specifies that section 1016.3 "shall not be interpreted to change the requirements of [s]ection 1016.5."

Prior to the enactment of section 1473.7, only an individual who was in custody could seek a writ of habeas corpus to challenge a conviction for an offense that had adverse immigration consequences; a person out of custody had no legal means of challenging a conviction on that basis. (*People v. Rodriguez* (2021) 68 Cal.App.5th 301, 314; see *People v. Villa* (2009) 45 Cal.4th 1063, 1066 [individual subject to deportation proceedings could not obtain relief on habeas corpus because he had completed probation and was no longer in custody].) Thus, "[a]s explained in the report of the Senate Committee on Public Safety when considering the bill that became former section 1473.7 (Sen. Com. on Public Safety, Rep. on Assem. Bill No. 813 (2015-2016 Reg. Sess.) as amended June 22, 2015 (Public Safety, Report on Assembly Bill No. 813)), the purpose of the legislation was to 'fill a gap in California criminal procedure' (Public Safety, Rep. on Assem. Bill No. 813, *supra*, p. 5) by providing a means to challenge a conviction by a person facing possible deportation who is no longer in criminal custody and thus for whom a petition for a writ of habeas corpus is not available: 'California lags far behind the rest of the country in its failure to provide its residents with a means of challenging unlawful convictions after their criminal sentences have been served. . . . [¶] This omission has a particularly devastating impact on California's immigrant community. . . . Many immigrants suffer convictions without having any idea that their criminal record will, at some point in the future, result in mandatory immigration imprisonment and deportation, permanently separating families. [¶] . . . Challenging the unlawful criminal conviction is often the only remedy available to allow immigrants an opportunity to remain with their families in the United States. Yet, in California, affected individuals have no way of challenging their unjust convictions once probation ends, because they no longer satisfy habeas corpus' strict custody requirements.' (Public Safety, Rep. on Assem. Bill No. 813, *supra*, p. 4.) The Senate report continued, 'This bill creates a new mechanism for post-conviction relief for a person who is no longer in actual or constructive custody. Specifically, it allows a person to move to vacate a conviction due

17

to error affecting his or her ability to meaningfully understand, defend against, or knowingly accept the actual or potential immigration consequences of the conviction.' (Public Safety, Rep. on Assem. Bill No. 813, *supra*, p. 5.)" (*People v. Fryhaat* (2019) 35 Cal.App.5th 969, 976-977.)

Legislative reports summarizing the bill originally enacting section 1473.7 repeatedly and broadly stated that the bill created " 'a mechanism of post-conviction relief for a person to vacate a conviction or sentence based on error damaging his or her ability to meaningfully understand, defend against, or knowingly accept *the immigration consequences* of the conviction.' (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 813 (2015-2016 Reg. Sess.) as amended Mar. 26, 2015, p. 1, italics added; Assem. Com. on Public Safety, 3d reading analysis of Assem. Bill 813 (2015-2016 Reg. Sess.) as amended Mar. 26, 2015, p. 1, italics added; see Assem. Com. on Public Safety, 3d reading analysis of Assem. Bill No. 813 (2015-2016 Reg. Sess.) as amended May 7, 2015, p. 1; Assem. Com. on Public Safety, 3d reading analysis of Assem. Bill No. 813 (2015-2016 Reg. Sess.) as amended May 14, 2015, p. 1; Sen. Com. on Public Safety, Analysis of Assem. Bill No. 813 (2015-2016 Reg. Sess.) July 7, 2015, p. 1; Sen. Com. on Public Safety, Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 813 (2015-2016 Reg. Sess.) May 10, 2015, p. 1; Sen. Rules Com., 3d reading analysis of Assem. Bill No. 813 (2015-2016 Reg. Sess.) as amended June 22, 2015, p. 1; Assem. Conc. Sen. Amend. to Assem. Bill No. 813 (2015-2016 Reg. Sess.) Aug. 24, 2016, p. 1; Assem. Conc. Sen. Amends. to Assembly Bill No. 813 (2015-2016 Reg. Sess.) as amended June 22, 2015, p. 1.)" (*Morales*, *supra*, 25 Cal.App.5th at p. 512.)

But the legislative history "also repeatedly indicates legislators were concerned about convictions that rendered noncitizens removable *or* inadmissible. Both Assembly and Senate Committee discussions of [the bill originally enacting § 1473.7], after referring to categories of crimes that render a noncitizen removable from the United States, refer to 'categories of crimes which will render a non-citizen *inadmissible* to the

18

United States, including: . . . drug convictions.' (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 813 (2015-2016 Reg. Sess.) as amended Mar. 26, 2015, p. 2, italics added; Sen. Com. on Public Safety, Analysis of Assem. Bill No. 813 (2015-2016 Reg. Sess.) July 7, 2015, p. 2, italics added; see Sen. Com. on Public Safety, Analysis of Assem. Bill No. 813 (2015-2016 Reg. Sess.) May 10, 2015, p. 2; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 813 (2015-2016 Reg. Sess.) as amended June 22, 2015, p. 1.)" (*Morales*, *supra*, 25 Cal.App.5th at p. 513, fn. omitted.)

The Legislature's express intent to " 'fill a gap in California criminal procedure' " by creating a mechanism through which individuals out of custody could file for relief from their convictions leads to two conclusions relevant here. First, the Legislature intended for section 1473.7 to exist within a larger statutory framework, including sections 1016.2, 1016.3, and 1016.5. Second, the Legislature's stated intent demonstrates that the purpose of the law was not to expand the scope of the immigration consequences to which existing law extended, but rather to allow individuals out of custody to access the relief previously only afforded to individuals in custody. Accordingly, we conclude the Legislature intended for the term "adverse immigration consequences" to be interpreted consistently with existing law.

The law at the time section 1473.7 was enacted demonstrates that the designation "adverse immigration consequences" was intended to refer to removal, exclusion, denial of naturalization, and damage to the defendant's lawful immigration status. Section 1016.5 expressly refers to removal, exclusion, and denial of naturalization. *Padilla* expressly addresses removal and cited section 1016.5 as a state statute addressing "immigration consequences." (*Padilla v. Kentucky*, *supra*, 559 U.S. at p. 374, fn. 15.) Section 1016.2, which codified *Padilla*, observed that California courts had previously required defense attorneys to investigate and advise their clients regarding immigration consequences of dispositions, citing cases involving deportation and exclusion.

19

(§ 1016.2, subd. (a).) Subdivision (e) of section 1016.2 notes that criminal defendants misadvised or not advised of immigration consequences "often suffer irreparable *damage to their current or potential lawful immigration status*, resulting in penalties such as mandatory detention, deportation, and permanent separation from close family." (Italics added.) Nothing in the law as it existed at the time section 1473.7 was enacted even remotely suggests that the scope of "adverse immigration consequences" extended to include the ability to sponsor a relative for a family-based visa.

The 2019 amendments do not change this result. Those amendments were not intended to expand the scope of relief previously authorized by section 1473.7, but rather "to clarify the timing and procedural requirements of motions for post-conviction relief that are based on a legal error regarding a defendant's comprehension of immigration consequences stemming from his or her conviction." (Sen. Com. on Public Safety, Rep. on Assem. Bill No. 2867 (2017-2018 Reg. Sess.) June 11, 2018, p. 1.) Indeed, the author of the 2019 amendments again focused on deportation, recognizing: "Many immigrants suffered convictions without having any idea that their criminal record will, at some point in the future, *result in mandatory immigration imprisonment and deportation*, which only serves to permanently separate families." (*Ibid.*, italics added.) Moreover, the Legislature's declarations provided in part that the bill "shall be interpreted in the interests of justice and consistent with the findings and declarations made in [s]ection 1016.2" (Assem. Bill No. 2867 (2017-2018 Reg. Sess.) § 1, subd. (c)), further demonstrating the Legislature's intent for section 1473.7 to operate within the context of existing law.

Thus, taken together, the language of the statute, the existing statutory scheme, and the purpose of the statute demonstrate the Legislature's intent for "adverse immigration consequences" to refer to removal or deportation, exclusion, or the denial of naturalization or lawful status of persons who plead guilty to charges without being advised of these immigration consequences. Each of these immigration consequences

20

concern the defendant's personal immigration status. Conversely, the denial of the ability to sponsor a relative affects the defendant only indirectly because it concerns the immigration status of another person. Thus, we conclude the (presumed) immigration benefit defendant raises here is not an adverse immigration consequence contemplated by section 1473.7. Here, there is no dispute but that the trial court properly advised defendant of the possible direct immigration consequences of his plea, that it may result in his being deported, or excluded from admission to the United States, or denied citizenship. We conclude there was no legal requirement that the court also advise defendant that his future potential ability to sponsor persons for citizenship or a visa may also be affected by his plea. The court did not err in denying defendant's motion.

Because we conclude defendant has failed to show an adverse immigration consequence to his plea as the law defines that term, we need not and do not reach his equal protection claim.[6]

---

[6] We recognize that defendant's appeal is part of a broader effort to have his plea vacated, his criminal charges reinstated, and his case referred to and resolved in veteran's court (see § 1170.9), based in large part on his quest to be released from the requirement that he submit to lifetime sex offender registration (see §§ 288.4, subd. (b); 290, subd. (d)(3)(C)(xii)). We observe that our opinion resolves only a narrow issue of statutory interpretation related to immigration and is not intended to opine on any other issue related to defendant's plea or his status as a registered sex offender, including the questionable wisdom of imposing a lifetime registration requirement on an offender whose adjudication was resolved by his successful completion of probation pursuant to section 1203.4.

## DISPOSITION

The order denying defendant's motion is affirmed.

       /s/
Duarte, Acting P. J.

We concur:

     /s/
Renner, J.

     /s/
Krause, J.